Bruce M. JONES, Dennis Ray Link and Sharon R. Link, individually and on behalf of all others in the State of California similarly situated, Plaintiffs,

v.

Thomas TURNAGE, or his successor, Administrator of the Veterans Administration; the United States of America; The Veterans Administration; and Leo Wurschmidt, Director, San Francisco Regional Office of the Veterans Administration, Defendants.

No. C-87-4702 JPV.

United States District Court,
N.D. California.

Nov. 14, 1988.

David M. Madway, Seymour Farber, Madway, Blumberg, Farber & Smith, Berkeley, Cal., for plaintiffs.

John R. Bolton, Asst. Atty. Gen., J. Christopher Kohn, Robert M. Hollis and Ruth A. Harvey, Attys., Civil Div., Dept. of Justice, Washington, D.C., Joseph P. Russoniello, U.S. Atty., Judith A. Whetstine, Asst. U.S. Atty., Chief, Civ. Div., George Christopher Stoll, Asst. U.S. Atty., San Francisco, Cal., for defendants.

MEMORANDUM OF OPINION and ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT and DENYING PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

VUKASIN, District Judge.

Defendants' motion for summary judgment and partial dismissal and plaintiffs' cross-motion for summary judgment came before the Court on August 11, 1988. The motions were submitted on the pleadings. Having reviewed tbe pleadings submitted in support of and in opposition to these motions, the Court makes the following determinations.

I. BACKGROUND

Plaintiffs Bruce M. Jones and Dennis Ray Link are United States Armed Services veterans who bought houses through the Veterans Administration's ("VA's") loan guaranty program. At the time they purchased their homes, they signed agreements with the VA in which they promised to reimburse the VA for any moneys paid by the VA on their behalf. Plaintiff Sharon R. Link is Dennis Link's wife; she never signed an indemnity agreement with the VA.

Plaintiffs failed to make payments on their loans from private lenders, and the

loans were subsequently foreclosed. The private lending institutions sold the mortgaged property for less than the outstanding balance on the loan; accordingly, a deficiency was left. Pursuant to its guaranty with the mortgagee, the VA paid the deficiency.

Both Jones and Mr. Link requested waivers of their loan guaranty debt, which the VA denied. Plaintiffs apparently had opportunities to appeal the VA's initial denial of the waiver requests to the Board of Veteran Appeals, but elected not to do so.

Plaintiffs then filed a complaint in this Court, seeking an injunction pursuant to California's Anti–Deficiency Law (Cal.Code Civ.Proc. § 580b) barring defendants from collecting from plaintiffs the deficiencies left after the sale of their residences and compelling the VA to return funds previously collected or withheld. The complaint was filed as a class action, on behalf of all other veterans or widows of veterans eligible for VA loan guaranties and against whom a claim by the VA has been or will be made to collect a deficiency following a foreclosure on the class member's residence. The Court has not made any decision as to certification of this class.

Defendants now move for summary judgment, seeking an order of this Court that plaintiffs' claims are barred as a matter of law. Alternatively, defendants United States, the Veterans Administration, and Leo Wurschmidt, Director of the San Francisco Regional Office of the VA, move for dismissal of all claims against them on the ground that this Court lacks jurisdiction over them. Plaintiffs have filed a cross-motion for summary judgment, seeking a finding that California's Anti-deficiency Law applies to defendants' claims against plaintiffs, and is not preempted by federal law.

## II. DISCUSSION

### A. The VA Home Loan Guaranty Program

The VA offers veterans the opportunity to obtain guaranties of home loans from non-VA lenders. See 38 U.S.C. §§ 1801–32.

A veteran may obtain a VA guaranty upon payment to the VA of 1% of the total loan amount. Id. § 1829(a). A VA guaranty offers the veteran certain advantages. Often lenders do not require a down payment on the house, and the interest rate, set by the VA Administrator, is usually below the market rate. Id. § 1803(c); 38 C.F.R. § 36.4311 (1987). The VA regulations also limit the closing costs, charges, and fees assessed veterans. 38 C.F.R. § 36.4312 (1987).

The VA's guaranty obligates it upon the veteran's default to reimburse the mortgagee. 38 C.F.R. § 36.4321(a) (1987). Should the mortgaged property's net value fall short of the total indebtedness, the United States becomes liable under the guaranty for the deficiency. 38 U.S.C. § 1816(c)(8); 38 C.F.R. § 36.4321 (1987). When this action was filed, the United States' maximum liability for each loan guaranty was the lesser of 60% of the total loan or $27,500. 38 U.S.C. §§ 1803(a)(1), 1810(c); 38 C.F.R. § 36.4302(a) (1978).

If a lender meets the requirements of 38 U.S.C. § 1802(d), the loan may be guaranteed without the VA's prior approval. In that case, the veteran applies for a guaranty through the lender, and the lender determines whether the veteran qualifies for a VA home loan guaranty. If the veteran qualifies, the agreement between the VA and the veteran is set forth on VA Form 26–1820—"Report of Home Loan Processed on Automatic Basis."

If the lender does not meet the requirements of 38 U.S.C. § 1802(d) or if the lender is unsure whether the veteran's credit is sufficient for a VA guaranteed loan, the loan is processed on a non-automatic basis. In that case, the veteran and lender jointly apply for a guaranty by submitting VA Form 26–1802a—"VA Application for Home Loan Guaranty"—to the VA. The VA then reviews the application and determines whether the veteran qualifies for a VA guaranty. If the guaranty is approved, the loan is guaranteed upon the veteran's and the lender's signature on VA Form 26–1876—"Certification of Loan Disbursement."

The regulations governing the "Report of Home Loan Processed on Automatic Basis" and the "VA Application for Home Loan Guaranty" (collectively referred to as the "indemnity agreements") provide that they are governed by federal law. 38 C.F.R. § 36.4334 (1987). The regulations provide that any provision of the loan instruments inconsistent with the regulations is automatically amended to conform to the regulations. *Id.* The indemnity agreements also provide that they are governed by federal law and that the veteran will be liable for all amounts paid by the VA because of a veteran's default.

If the veteran defaults on loan payments, the note holder may foreclose on the property. The holder is required to inform the VA that the veteran has failed to make the required payments and that it intends to foreclose. *Id.* §§ 36.4315(a), 36.4317. Although the VA retains substantial control over how the sale is conducted, *id.* §§ 36.-4302, 36.4324, the VA may begin and prosecute foreclosure proceedings only if the note holder fails to exercise reasonable diligence in foreclosing the property. *Id.* § 36.4319(f).

If a deficiency remains after the sale of the property, the VA must reimburse the holder up to the amount of the guaranty. *Id.* § 36.4321. After the VA pays on its guaranty, the VA has two alternative remedies to recover the amount paid. *Id.* § 36.4323(a), (e). First, the VA becomes subrogated to the note holder's rights and may pursue any causes of action the note holder may have had against the defaulting veteran. The VA's rights are junior to the holder's rights until the holder has received the full amount payable on the original contract with the veteran. *Id.* § 36.4323(a). Second, the VA has an independent right of indemnification which permits it to proceed directly against the veteran for the amount paid on the guaranty. *See id.* § 36.4323(e).

Once the debt is established, the VA must deduct the amount of indebtedness from the benefits received by the veteran through participation in a VA-administered benefits program. 38 U.S.C. § 3114. The veteran has several avenues of challenging the VA's right to collect the debt before collection begins. *See* 38 C.F.R. §§ 1.911 *et seq.*

*B. The California Anti–Deficiency Law*

Foreclosures on homes purchased with the proceeds of a VA-guaranteed loan are conducted by the note holder in accordance with the law of the state in which the property is located. 38 U.S.C. § 1820(a)(6); 38 C.F.R. §§ 36.4319, 36.4320 (1988). Under California law, the holder of a loan may foreclose either judicially or non-judicially, so long as there is a power of sale provision in the mortgage or deed of trust. Cal. Civ.Code §§ 2931, 2924.

California Code of Civil Procedure § 580b prohibits any deficiency judgment from lying after a sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, on a dwelling, given to the vendor to secure payment of the balance of the purchase price of real property, or under a deed of trust or mortgage. Code of Civil Procedure § 580d bars judgments for any deficiencies upon a note secured by a deed of trust or mortgage upon real property where the real property was sold by the trustee or mortgagee under a power of sale provision.

As plaintiffs have noted, the California Legislature has also barred waivers of certain preforeclosure and antideficiency protections. *Id.* § 2953. California courts have held that contractual waivers of the bar on deficiency judgments are contrary to public policy. *Palm v. Schilling*, 199 Cal.App.3d 63, 244 Cal.Rptr. 600, 608–09 (1988). While § 580b generally does not prevent the lender from collecting a deficiency from a guarantor of the debt, *e.g., Gottschalk v. Draper Companies*, 23 Cal. App.3d 828, 830, 100 Cal.Rptr. 434, 436 (1972), there is an exception to this rule where the guarantor is in reality the principal debtor. *Valinda Builders v. Bissner*, 230 Cal.App.2d 106, 111, 40 Cal.Rptr. 735, 738 (1964). Plaintiffs cite one case which stated in dicta that a guarantor has no right under Cal.Civ.Code § 2847 (which provides that a principal is bound to reim-

burse a surety for the amount the surety disbursed to the principal's creditor) to get reimbursement from a principal for the amount the guarantor paid on a deficiency judgment arising from the principal's obligation. *Heckes v. Sapp*, 229 Cal.App.2d 549, 555, 40 Cal.Rptr. 485, 485 (1964); *see also Union Bank v. Gradsky*, 265 Cal. App.2d 40, 46, 71 Cal.Rptr. 64, 69 (1968) (where creditor elects to pursue a nonjudicial sale of principal's secured property, guarantor of debt may not obtain a deficiency judgment against the principal).

Accordingly, the issue before this Court is whether the California Anti–Deficiency Law, Cal.Code Civ.Proc. § 580b, which appears to bar a deficiency judgment against a principal debtor by either a creditor or a guarantor, also bars the VA from seeking indemnity from a veteran for the amounts the VA has paid under its guaranty of the veteran's loan for any deficiency left after foreclosure.

### C. Whether California's Antideficiency Law Bars All of the VA's Indemnity Rights Against Veterans for Deficiencies Left After Foreclosure

Defendants raise two principal arguments in support of their motion for summary judgment and against plaintiff's motion for summary judgment. First, defendants argue that the regulations governing VA-guaranteed loans provide an independent right of indemnification from veterans who default on their VA loans under 38 C.F.R. § 36.4323(e). Second, defendants argue that the VA must be governed by a nationwide, common law rule that permits the VA to recover indemnity from veterans for money paid under the VA guaranty as a result of the veteran's loan default.

#### 1. 38 C.F.R. § 36.4323(e)

■ Upon payment of a VA home loan guaranty, federal regulations grant the VA two independent rights against a veteran who has defaulted on a loan. First, the VA is subrogated to the rights of the note holder, and thus obtains all the rights and obligations which the holder had. 38 C.F.R. § 36.4323(a) (1987). Second, the VA has

a direct right of action for monies paid by the VA on behalf of the veteran. *Id.* § 36.4323(e). Defendants argue that the VA has consistently maintained that it is has two distinct rights for collection from veterans of moneys paid under its guaranty: one based on subrogation, the other on indemnity. *See* Decisions of the Administrator No. 645, 1 A.D.V.A. at 1151–64 (1945) (holding that the VA may recover from the veteran indemnification for the amounts the United States may pay pursuant to the VA's guaranty of the veteran's debt, notwithstanding the existence of a state anti-deficiency law). A court must accord an agency's interpretation of its regulations substantial deference unless the interpretation is "plainly erroneous or inconsistent with the regulation[s]." *State of California, Department of Education v. Bennett*, 833 F.2d 827, 830 (9th Cir.1987). Accordingly, defendants argue that its claim of an independent right of indemnification under 38 C.F.R. § 36.4323(e) must be upheld.

Defendants further cite *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961). In *Shimer*, the United States sued a veteran to recover an amount of moneys that the VA, as guarantor of a loan made to him by a private lending institution, had paid to that institution upon the veteran's default. The United States argued both that it was subrogated to the rights of the lending institution and that it had an independent right of indemnity, citing 38 C.F.R. § 36.4323(e). The district court and court of appeals applied the Pennsylvania Deficiency Judgment Act, which prohibited a mortgagee from recovering a deficiency judgment upon foreclosure unless it first obtains a court determination of the fair market value and credits that value to the unsatisfied liability. *Id.* at 377, 81 S.Ct. at 1557. The lower courts found that the debtor in this case was discharged from his entire debt after foreclosure, because the mortgagee had not followed the statutory procedure. Thus, the lower courts found that the VA, as guarantor, could not recover the deficiency amount it paid the mortgagee, as under the laws of surety, the surety may

not collect from the principal any amount that the principal was not obligated to pay the mortgagee. *Id.* at 376–77, 81 S.Ct. at 1557.

The Supreme Court reversed, finding that the VA had a right to indemnity under 38 C.F.R. § 36.4323(e) independent of its right of subrogation. *Shimer*, 367 U.S. at 387, 81 S.Ct. at 1562. The Supreme Court noted with approval that the VA had previously determined that it could "recover over against the veteran on a theory of indemnity in situations where recovery by way of subrogation was barred by state law." *Id.* (citing Decisions of the Administrator of Veterans' Affairs, No. 645, *supra*). The court further held that 38 C.F.R. § 36.4323(e)

> is merely declaratory of a surety's customary right of indemnity for amounts paid pursuant to an obligation of the guarantor assumed with the consent of the principal. Restatement of the Law of Security § 104. This right is in general unaffected by defenses of the principal which are not available to the guarantor.

*Shimer*, 367 U.S. at 387–88, 81 S.Ct. at 1562–63. *Shimer* has since been followed by a number of circuits, including this one. *See United States v. Rossi*, 342 F.2d 505, 507 (9th Cir.1965); *see also McKnight v. United States*, 259 F.2d 540, 543–44 (9th Cir.1958) (holding that Cal.Code Civ.Proc. § 580b may not impair the VA's independent federal right under 38 C.F.R. § 36.4323(e) to seek indemnity from defaulting veteran).

Despite what appears to be a clear statement of the law, plaintiffs argue that the above-cited cases are either distinguishable or are no longer valid authority in light of more recent Supreme Court decisions. Plaintiffs essentially argue that neither the enabling VA statutes nor 38 C.F.R. § 36.4323(e) preempt or displace California law. Because the federal statutes governing the VA Home Loan Guarantee Program are silent as to state law preemption, plaintiffs argue, the Court must infer that the California Anti–Deficiency Law prohibits the VA from seeking indemnity from defaulting veterans. Plaintiffs cite several

VA regulations which refer to state and local laws as governing a foreclosure process. *See, e.g.,* 38 C.F.R. §§ 36.-4315(b)(2)(vii), 36.4320(d), and 36.4323(c).

Plaintiffs argue that *Shimer* is not applicable on several grounds. First, plaintiffs argue that no federal VA Home Loan Program statute has specifically displaced state law. Plaintiffs cite 38 U.S.C. § 1820(a)(6), which provides in part that the VA Administrator "shall not deprive any State or political subdivision thereof of its civil or criminal jurisdiction of, on or over such property ... or impair the rights under State or local law of any persons on such property." Plaintiffs conclude this law infers that Congress intended to adopt state anti-deficiency laws as federal law and to prevent the VA from seeking indemnity from a veteran following foreclosure. Second, plaintiffs point out that the *Shimer* decisions is 27 years old and that, apparently, the case has a limited shelf life. Plaintiffs argue that recent Supreme Court opinions, particularly *Hillsborough County v. Automated Medical Laboratories*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985), have held that a regulation may not inferentially preempt state law. Thus, plaintiffs argue, because *Shimer* failed to address specifically whether 38 C.F.R. § 36.4323(e) preempted Pennsylvania law, the case is no longer valid. Plaintiffs further cite *United States v. Stewart*, 523 F.2d 1070 (9th Cir.1975) and *United States v. Vallejo*, 660 F.Supp. 535 (W.D.Wash. 1987) in support of its position.

This Court does not find either argument of plaintiffs persuasive. While it is clear that the laws and regulations governing VA guaranties do not preempt all state laws, it is also clear to the Court that state law may not impair the VA's independent right to seek indemnity pursuant to 38 C.F.R. § 36.4323(e). 38 U.S.C. § 1820(a)(6) applies only to the VA Administrator's power to acquire and manage property under the VA Home Loan Guaranty Program. Nothing in § 1820(a)(6) indicates an intent by Congress to adopt state anti-deficiency laws as federal law.

Second, despite plaintiffs' arguments to the contrary, the Court finds that *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), and *McKnight v. United States*, 259 F.2d 540 (9th Cir. 1958), are directly on point. Those cases specifically held that the VA has an independent right under 38 C.F.R. § 36.4323(e) to seek indemnity from a defaulting veteran where foreclosure leaves a deficiency which the VA as guarantor was required to pay the note holder, notwithstanding state statutes which might preclude such recovery by a guarantor other than the VA. The Court believes that to hold otherwise would fly directly in the face of these precedents. *United States v. Stewart*, 523 F.2d 1070 (9th Cir.1975), is distinguishable; there, the parties specifically struck language in a direct loan agreement between the VA and a veteran that provided that the loan would be governed by Title 38, United States Code, and regulations thereunder. In fact, the *Stewart* court noted that, had the language in question not been stricken, the case would have been governed by *United States v. Shimer, supra. Stewart*, 523 F.2d at 1072 n. 1.

Third, the Court does not find that *Hillsborough County v. Automated Medical Laboratories*, 471 U.S. 707, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985), and the other cases plaintiffs cite either explicitly or implicitly overrule *Shimer*. In *Hillsborough*, the issue was whether two local ordinances imposing licensing and identification requirements on plasma banks were preempted by federal law, given that the Food and Drug Administration had promulgated pervasive regulations of vendors of blood products. The Supreme Court noted that state and local laws may be preempted by federal regulations as well as by federal statutes. *Id.* at 713, 105 S.Ct. at 2375. However, the Court refused to hold that the local ordinances in question were preempted because there was no indication that Congress intended to reserve exclusive regulation of blood products vendors to the Federal Government. *Id.* at 714–15, 105 S.Ct. at 2375–76. In fact, the FDA expressly stated that it did not intend to "usurp the powers of State and local authorities to regulate plasmapheresis procedures in their localities." *Id.* at 714, 105 S.Ct. at 2375.

Here, the situation is entirely different. The Court agrees with plaintiff that Congress did not intend to preclude the application of *any* state laws to veterans who obtain VA guaranties. For example, 38 U.S.C. § 1820(a)(6) provides that foreclosures are conducted according to the law of the state where the property is located. However, there is *no* indication in the statutes, regulations, or legislative history that Congress intended to nullify the VA's right to seek indemnity from a defaulting veteran in states with anti-deficiency laws.

The California Anti–Deficiency Law, Cal. Code Civ.Proc. § 580b, is incorporated in 38 C.F.R. § 36.4323(a), which subrogates the VA to the rights of the note holder. Thus, where the note holder is barred from obtaining a deficiency judgment against the veteran, the VA's subrogation rights extend no further. However, under § 36.4323(e), the VA has a separate, independent right of indemnity. Cal.Code Civ. Proc. § 580b may not impair this right. *McKnight v. United States, supra*, 259 F.2d at 543–44. Where Congress has not completely displaced state law in a specific area, state law is nullified to the extent it actually conflicts with federal law. *Fidelity Federal Savings and Loan Association v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982); *see also Hillsborough, supra*, 471 U.S. at 712, 105 S.Ct. at 2374 ("the Supremacy Clause ... invalidates state laws that 'interfere with, or are contrary to,' federal law." (quoting *Gibbons v. Ogden*, 9 Wheat. (22 U.S.) 1, 211, 6 L.Ed. 23 (1824))). Because application of California Anti–Deficiency Law to VA-guaranteed veterans would conflict with 38 C.F.R. § 36.4323(e), the Court finds that Cal.Code Civ.Proc. § 580b does not bar the VA from seeking indemnity from California veterans who default on their VA-guaranteed loans.

### 2. Whether Federal Common Law Governs

■ Because the Court finds that 38 C.F.R. § 36.4323(e) expressly defines the

VA's independent right to indemnity, it is unnecessary to determine whether federal common law provides an alternative ground for this right. Nevertheless, because the parties have extensively briefed this issue, the Court will address the issue of whether federal common law creates a nationwide federal rule permitting the VA to seek indemnity.

The parties agree that federal law governs the rights of the United States under a nationwide program. The parties disagree, assuming § 36.4323(e) does not define the VA's right to indemnity, whether state law should be incorporated to provide the content of that federal law. *See, e.g., Burks v. Lasker,* 441 U.S. 471, 477, 99 S.Ct. 1831, 1836, 60 L.Ed.2d 404 (1979). In a case such as this one, which implicates a federal statute, the predominant consideration must whether Congress intended federal judges to develop their own rules or to incorporate state law to decide whether the VA has an independent right to seek indemnity from defaulting veterans. *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1458 (9th Cir.1986).

The United States Supreme Court has established a three-part test to determine, in the absence of clear congressional intent, whether formulating a federal rule would be appropriate as a matter of judicial policy. *United States v. Kimbell Foods,* 440 U.S. 715, 728–29, 99 S.Ct. 1448, 1458–59, 59 L.Ed.2d 711 (1979). A court must determine: (1) whether the issue requires a "nationally uniform body of law"; (2) "whether application of state law would frustrate specific objectives of the federal programs"; and (3) whether "application of a federal rule would disrupt commercial relationships predicated on state law." *Id.; Mardan Corp.,* 804 F.2d at 1458. The Court now applies this test to the facts of this case.

### a. Nationally Uniform Body of Law

Plaintiffs argue that the VA statute evinces a congressional intent not to displace state law with a nationally uniform body of law. Plaintiffs note that state law is expressly incorporated for VA-loan foreclosure proceedings, *see* 38 U.S.C. § 1820(a)(6), and that therefore state law should apply as to the VA's right to recover a deficiency as well. Plaintiffs further argue that, because the National Housing Act was amended in 1981 to create a uniform federal foreclosure remedy (*see* 12 U.S.C. § 3701), the Court can infer by Congress' failure to do the same for the VA statute that state anti-deficiency laws were intended to prohibit the VA from seeking indemnity from defaulting veterans. Plaintiffs also cite *United States v. Vallejo,* 660 F.Supp. 535, 537 (W.D.Wash.1987), in which the court determined there was no need for a uniform body of federal law with regard to the VA's indemnity rights.

Defendants argue that a uniform rule is needed because the VA-guaranty agreements expressly state that they are governed by federal law and are identical throughout the nation. Defendants note that, unlike the loan programs in *Kimbell Foods,* the VA guaranty agreements are not individually negotiated. *Kimbell Foods,* 440 U.S. at 730, 99 S.Ct. at 1459. Defendants refute plaintiffs' argument that, because state law governs the foreclosure *procedure,* it should also govern the VA's right to indemnity. Defendants argue that the post-foreclosure relationship between the veteran and the VA raises a separate issue.

The Court agrees with defendants that a nationally uniform rule is required. While Congress and the VA contemplated that foreclosure actions will be conducted under state law, 38 U.S.C. § 1820(a)(6), 38 C.F.R. §§ 36.4319, 36.4320 (1987), they did not contemplate the VA forfeiting its right to seek indemnity depending on the existence of a state anti-deficiency law. Clearly, the national interest is best served by having nationally-used, identical guaranty agreements to which the VA is a party provide uniform rights and responsibilities nationwide. *See Clearfield Trust Co. v. United States,* 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943); *United States v. View Crest Garden Apartments, Inc.,* 268 F.2d 380 (9th Cir.), *cert. denied,* 361 U.S. 884, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959). Subjecting the VA's indemnity rights under this na-

tional program to the "vagaries of the various state laws which might control" would increase the uncertainties the VA currently faces. *United States v. Wells*, 403 F.2d 596, 597–98 (5th Cir.1968). Further, the decentralized nature of the current loan program would be eroded should state anti-deficiency laws apply, as more VA involvement would be required to assess the risks according to law of the veteran-borrower's state. *Cf. Kimbell Foods*, 440 U.S. at 732, 99 S.Ct. at 1460 (where Small Business Administration used local SBA offices familiar with local law to approve SBA loan applications (as opposed to other lenders, as does the VA), uniform national rule was unnecessary).

Accordingly, the Court finds that, under the *Kimbell Foods* test, a uniform national rule permitting the VA to seek indemnity from veterans for moneys paid on its guaranty veterans is required.

### b. Frustration of Government Purposes

Much of the foregoing discussion is equally applicable to the second prong of the *Kimbell Foods* test. The VA clearly has an an objective in providing a nationally uniform means of safeguarding its interests in the security for its guaranty. *Gatter v. Nimmo*, 672 F.2d 343, 345 (3d Cir. 1982). While the cost of the federal program is not a controlling factor in determining whether a uniform federal rule should apply, it may be considered in determining whether federal objectives are frustrated by adoption of state law. *United States v. Pastos*, 781 F.2d 747, 752 (9th Cir.1986).

Accordingly, the Court finds that adoption of Cal.Code of Civ.Proc. § 580b as federal law, thus preventing the VA from safeguarding its interests in the security for its guaranty, would frustrate important governmental objectives.

### c. Disruption of Commercial Relationships Based Upon State Law

Plaintiffs suggest that the expectations of the veteran-borrowers, their commercial and consumer creditors, and holders of non-purchase money security interests will be thwarted if the VA is permitted to collect a deficiency from defaulting veterans. This argument is without merit. First, as defendants have shown, it has been the VA's practice since at least 1945 to assert an independent right of indemnity against veterans whose deficiencies the VA has paid as guarantor. *See* Administrator's Decision No. 645, *supra.* Second, the indemnity agreements between the veteran and the VA plainly state that federal statutes and regulations govern their terms. They further state that disposition of the property will not relieve the veteran of liability for any guaranty claim which the VA is required to pay the lender on account of the veteran's default. Accordingly, it can hardly be argued that either the veteran or his other creditors would be surprised by the VA's enforcement of this right.

### 3. Summary

In sum, the Court finds that 38 C.F.R. § 36.4323(e) provides the VA with an express right to seek indemnity from a veteran who defaults on a VA-guaranteed loan which leaves a deficiency after foreclosure. *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961) and *McKnight v. United States*, 259 F.2d 540 (9th Cir.1958) clearly hold that state anti-deficiency laws may not impair this right. Finally, even if § 36.4323(e) did not provide the VA with an independent right of indemnity, federal common law requires that such a right exist regardless.

### D. Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction

Because this Court finds that plaintiffs are not entitled to the relief they seek as a matter of law, it does not reach the issue of whether it has subject matter jurisdiction over defendants the United States, the Veterans Administration, and Leo Wurschmidt. Accordingly, this motion is denied as moot.

### III. ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiffs' motion for summary judgment is DENIED; and

3. The motion to dismiss for lack of subject matter jurisdiction of defendants United States, the Veterans' Administration, and Leo Wurschmidt is DENIED as moot.

This Court shall enter judgment accordingly. Each side shall bear its own costs and attorneys' fees.