904 F.2d 1362
 Harold D. WHITEHEAD; Carole M. Underwood; James C. Jensen,
Jr.; Gregory M. Smith; Paul D. Brady, Plaintiffs-Appellees,
v.
Edward J. DERWINSKI, Secretary of the Department of Veteran
Affairs*; United States of America; U.S.
Department of Veterans Affairs**; Richard F.
Murphy, Director, Seattle Regional Office of the Veterans
Administration, Defendants-Appellants.
 No. 89-35069.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 7, 1990.
Decided June 4, 1990.
 
 Mark B. Stern, Dept. of Justice, Civ. Div., Washington, D.C., for defendants-appellants.
 David A. Leen, Leen & Moore, Seattle, Wash., for plaintiffs-appellees.
 Appeal from the United States District Court for the Western District of Washington.
 Before BROWNING, ALARCON and RYMER, Circuit Judges.
 RYMER, Circuit Judge:
 
 
 1
 Appellant, the Secretary of the Department of Veteran Affairs ("VA"), appeals from the summary judgment against him in a class action on behalf of veterans[1] in the state of Washington from whom the Department of Veteran Affairs is seeking to collect deficiencies remaining after default and foreclosure on VA-guaranteed home loans. The district court held that the VA's rights, as guarantor, against the debtor could not exceed the lender's rights, and therefore found the VA's claims against the veterans barred by Washington's antideficiency law.
 
 
 2
 Although we disagree with the district court that the VA has no right to indemnity, the VA may, in the state of Washington, choose whether to instruct a lender to pursue judicial foreclosure, under which the debtor may be held personally liable for the full amount of the debt, or non-judicial foreclosure, in which case no deficiency may be collected. Wash.Rev.Code Ann. Secs. 61.24.040, 61.24.100 (Supp.1989). The VA has chosen to instruct Washington lenders to pursue nonjudicial foreclosure. Because this method, under Washington law, does not allow the lender to collect a deficiency judgment, the VA cannot proceed against the debtor by way of its statutory right to subrogation. See 38 U.S.C.A. Sec. 1832 (West Supp.1989). However, it could have chosen the other path, exercised its statutory subrogation right, and collected in full against the debtor. Therefore, Washington law is consistent with federal law in providing the VA a full remedy against the debtor. Accordingly, in this case, Washington state law provides the federal rule for decision, and the VA is bound by the consequences of the path it chooses under that law. We affirm.
 
 
 3
 * The Department of Veteran Affairs provides housing assistance to veterans by guaranteeing home loans made to veterans by private lenders. See generally 38 U.S.C.A. Secs. 1801-33 (West 1979 & Supp.1989); 38 C.F.R. Part 36 (1989). Federal law governs the guaranty agreement between the veteran and the VA. See VA Form 26-1820; VA Form 26-1802a.
 
 
 4
 If a veteran defaults on a loan, the lender must give the VA thirty days notice before foreclosing. 38 C.F.R. Sec. 36.4317. The VA then has fifteen days in which to give the lender instructions as to the proceedings.[2] 38 C.F.R. Sec. 36.4324(f). The statute does not establish a federal foreclosure proceeding, but instead contemplates foreclosure under state or local law. See 38 U.S.C.A. Secs. 1820(a)(6), 1832; 38 C.F.R. Secs. 36.4319, 36.4320.
 
 
 5
 The VA must reimburse the lender for certain losses remaining after the foreclosure sale. 38 C.F.R. Sec. 36.4321. The VA may then recover from the borrower the amount the VA paid to the lender.[3] 38 C.F.R. Sec. 36.4323(a), (e) (any amounts paid by the VA on account of liabilities of the veteran "constitute a debt owing to the United States" by the veteran); VA Form 26-1820; VA Form 26-1802a.
 
 
 6
 Washington law governed the foreclosures at issue in this action. Washington provides two foreclosure methods. In a non-judicial foreclosure under Wash.Rev.Code Ann. Sec. 61.24.040, the proceeds of the foreclosure sale are deemed to satisfy the debtor's obligation to the lender in full; the lender may not proceed personally against the debtor to collect any deficiency. Wash.Rev.Code Ann. Sec. 61.24.100.
 
 
 7
 On the other hand, judicial foreclosure under Wash.Rev.Code Ann. Sec. 61.12.040 allows the lender to seek a deficiency, see Wash Rev.Code Ann. Sec. 61.12.070, but also provides the debtor significant rights: (1) the right to a court order providing a minimum price at which the property can be sold in foreclosure, Wash.Rev.Code Ann. Sec. 61.12.060; (2) the right to redeem the property within one year, Wash.Rev.Code Ann. Sec. 6.23.020, and (3) homestead rights, Wash. Const. art. XIX, Sec. 1. See Donovick v. Seattle-First Nat'l Bank, 111 Wash.2d 413, 757 P.2d 1378, 1381 (1988) (en banc) (Dore, J., dissenting). Judicial foreclosure is more time-consuming and more expensive. See id. at 1380; see also id. at 1381-82 (Dore, J., dissenting).
 
 
 8
 The VA instructs Washington lenders to proceed by non-judicial foreclosure. Even though the procedure does not permit the lender to seek a deficiency judgment against the debtor, the VA has attempted to collect the amount of any loss it incurs in reimbursing the lender for deficiencies remaining after foreclosure by asserting a right to indemnity.
 
 
 9
 The appellee class of veterans brought suit, claiming that under Washington law the non-judicial foreclosure sale satisfies its obligations both to the lender and to the VA. The VA maintains that under federal law it possesses both a right of subrogation, which depends on the debtor's obligation to the lender, and an independent right to indemnity arising from its agreement with the debtor.
 
 
 10
 On cross-motions for summary judgment, the district court granted summary judgment for plaintiffs.
 
 II
 
 11
 We review a district court's grant of summary judgment de novo. See Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989); State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir.1989).III
 
 
 12
 * Federal law governs questions involving the rights of the United States arising under nationwide federal programs. United States v. Kimbell Foods, Inc., 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979). The VA's rights, as guarantor, upon default by a debtor are governed by 38 U.S.C.A. Sec. 1832. The statute provides for a right to subrogation.
 
 
 13
 [T]he Administrator may ... pay to [the lender] the guaranty not in excess of the pro rata portion of the amount originally guaranteed. If the Administrator makes such a payment, the Administrator shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty.
 
 
 14
 Id. at Sec. 1832(a)(1).
 
 
 15
 The regulations interpreting the statutory provisions include a section headed "Subrogation and indemnity." 38 C.F.R. Sec. 36.4323. The section first discusses subrogation.
 
 
 16
 The Secretary shall be subrogated to the contract and the lien or other rights of the holder to the extent of any sum paid on a guaranty or on account of an insured loss, which right shall be junior to the holder's rights as against the debtor or the encumbered property until the holder shall have received the full amount payable under the contract with the debtor.
 
 
 17
 38 C.F.R. Sec. 36.4323(a). The VA's right to subrogation is dependent on the lender's right, so that in a Washington non-judicial foreclosure, where the lender has no right to collect a deficiency, the VA has none either.
 
 
 18
 The VA's primary claim in this case is that it has a right to indemnity from the debtor independent of its right to seek subrogation on the basis of the lender's claim. The district court held, "The government's right to indemnification goes no farther than the borrower's obligation to the lender." Whitehead v. Turnage, 701 F.Supp. 795, 796 (W.D.Wash.1988) (citing United States v. Vallejo, 660 F.Supp. 535, 539-40 (W.D.Wash.1987)).
 
 
 19
 38 C.F.R. Sec. 36.4323(e) provides: "Any amounts paid by the Secretary on account of the liabilities of any veteran guaranteed or insured under the provisions of 38 U.S.C. Chapter 37 shall constitute a debt owing to the United States by such veteran." See also VA Form 26-1820; VA Form 26-1802a. In 1945, the Administrator of the Veterans' Administration, interpreting the forerunner of the current regulation,[4] stated that, as guarantor, the VA "is entitled to recover indemnification from the principal debtor. This is true, notwithstanding that the creditor could not at the time the guarantor sues the principal debtor maintain a suit against the latter." See Decisions of the Administrator of the Veterans' Administration, No. 625 at 1154, 1157 (Jan. 22, 1945). The Administrator's interpretation of the statute is controlling unless "plainly erroneous or inconsistent with the regulation." Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945).
 
 
 20
 The Supreme Court also interpreted the statutory and regulatory scheme as providing an independent right to indemnity.
 
 
 21
 Moreover, the recognition of a loss to the guarantor merely because of a failure of the lender's rights against the principal is incompatible with the background of general surety laws against which the statute was drawn....
 
 
 22
 For these reasons, we are constrained to agree with the uniform construction of the lower courts, including that of the two courts below, that the statute affords an independent right of indemnity to the Veterans Administration.
 
 
 23
 Finally, we find untenable respondent's argument that the applicable Regulation does not support recovery because there was no debt due from the veteran at the time of payment on the guaranty.... The Regulation is merely declaratory of a surety's customary right of indemnity for amounts paid pursuant to an obligation of the guarantor assumed with the consent of the principal. This right is in general unaffected by defenses of the principal which are not available to the guarantor.
 
 
 24
 United States v. Shimer, 367 U.S. 374, 387-88, 81 S.Ct. 1554, 1562-63, 6 L.Ed.2d 908 (1961) (emphasis in original) (citing, inter alia, Decisions of the Administrator of Veterans' Affairs, No. 625 at 1154). See also United States v. Rossi, 342 F.2d 505, 506 (9th Cir.1965); McKnight v. United States, 259 F.2d 540, 543 (9th Cir.1958).
 
 
 25
 In reaching this conclusion, the Court noted, "Relief from liability in these circumstances would convert a guaranty into a grant of aid. But the entire history of the 'home loan' provisions of the statute is inconsistent with an intent to make outright grants, rather than loans of cash or credit, to returning servicemen." Shimer, 367 U.S. at 387, 81 S.Ct. at 1562 (citation omitted). The VA therefore argues that this history establishes a right of indemnity which is unaffected by any state foreclosure law.
 
 
 26
 The VA finds additional support in the loan documents. The form warns that, unless the veteran follows established procedures for transferring the loan, he will remain liable on the note and must "repay any guaranty claim which the VA may be required to pay your lender on account of default in your loan payments. The amount of any such claim payment will be a debt owed by you to the Federal Government. This debt will be the object of established collection procedures." VA Form 26-1820; VA Form 26-1802a. The same documents state that they are governed by federal law. Thus, the VA claims that debtors are aware that they will be liable in case of default and will not be protected by state law.
 
 
 27
 Appellees argue that the statutory and regulatory schemes do not establish a right to indemnity independent of the VA's right to subrogation. The statute speaks expressly of subrogation and is silent as to indemnity. See 38 U.S.C.A. Sec. 1832 (West Supp.1989). In addition, the regulation states that the veteran's debt arises from money paid by the Administrator "on account of the liabilities of any veteran." 38 C.F.R. Sec. 36.4323(e); cf. VA Form 26-1820; VA Form 26-1802a. Because a non-judicial foreclosure sale satisfies the debtor's obligations to the lender under Washington law, appellees argue that here, the VA's obligation to the lender does not arise from any liability of the debtor.
 
 
 28
 Appellees point to 38 C.F.R. Sec. 36.4323(f) as further support. This regulation releases the VA from any obligation to the lender if the lender releases the debtor from personal liability. As appellees argue, the VA would not need to prevent the lender from impairing the VA's rights if the VA indeed possessed an independent indemnity right.
 
 
 29
 In addition, appellees argue that the loan documents do not fairly warn veterans that in the event of foreclosure they may be liable for an amount greater than the amount that would be owed under state law. First, the document states that established collection procedures will be used--implying that in the event of foreclosure the VA will look to state law remedies. See VA Form 26-1820; VA Form 26-1802a. Second, the warning applies to assumption of loans, not foreclosures. Id. However, the documents do imply a foreclosure situation, albeit with a third party who has improperly assumed the loan. Id.
 
 
 30
 Given Shimer and its progeny, appellees' arguments are not persuasive. Courts have consistently interpreted 38 C.F.R. Sec. 36.4323 as giving the VA a right to indemnity in addition to its statutory right to subrogation. Shimer, 367 U.S. at 387-88, 81 S.Ct. at 1562-63 (citing, inter alia, Decisions of the Administrator of Veterans' Affairs, No. 625 at 1154); United States v. Rossi, 342 F.2d 505, 506 (9th Cir.1965); McKnight v. United States, 259 F.2d 540, 543 (9th Cir.1958); 38 U.S.C.A. Sec. 1832. Although the loan documents may be ambiguous as to the remedies available to the VA in the event of foreclosure, they unambiguously state that the loan terms are governed by the federal code and regulations. See VA Form 26-1820; VA Form 26-1802a. Federal regulations governing the loan give the VA a right to indemnity as well as a right to subrogation derived from the lender's claims. This does not mean, however, that the VA was free to exercise this right in the circumstances presented by this case.
 
 B
 
 31
 The VA argues that its right to indemnity is independent of lenders' rights to collect deficiencies under Washington law and also displaces any state law which would preclude it from proceeding personally against the debtor. It relies on United States v. Shimer, 367 U.S. 374, 387-88, 81 S.Ct. 1554, 1562-63, 6 L.Ed.2d 908 (1961), United States v. Rossi, 342 F.2d 505, 506 (9th Cir.1965), and McKnight v. United States, 259 F.2d 540, 543 (9th Cir.1958). However, these cases are not dispositive in this case.
 
 
 32
 In Shimer, the Supreme Court reversed the Third Circuit's determination that a lender's failure to comply with a Pennsylvania statute barred the lender's claim against the debtor, and thus barred the VA's rights as well. 367 U.S. at 388, 81 S.Ct. at 1563. In upholding the VA's right to collect against the debtor, the Court found that federal law completely displaced the Pennsylvania law which the debtor asserted barred the lender's claim. Both the state statute and the federal regulations provided a detailed, comprehensive method of calculating the amount that the lender was required to set off against the VA's guaranty as a result of the foreclosure sale. The Court stated, "[T]he method of determining these credits is ... specified in the Regulations, indeed spelled out in Sec. 36.4320 in such great detail that there can be little doubt of an administrative intent that such method should provide the exclusive procedure." Id. at 379, 81 S.Ct. at 1558 (citation omitted). The regulation at issue provided that the amount realized by the lender at the foreclosure sale was to be credited to its guaranty claim against the VA. Id. It further
 
 
 33
 specifie[d] the way in which the Veterans' Administration can require the mortgagee to credit more than the amount received at the foreclosure sale and thereby protect itself against the very risk the Pennsylvania Deficiency Judgment Act was designed to alleviate--the risk of having to make good its guaranty simply because the mortgaged property is sold for an inadequate price at a judicial sale.
 
 
 34
 Id. at 379, 81 S.Ct. at 1558. The regulation authorized the Administrator to specify a minimum bid price before the sale, which would also be the minimum amount which would be credited on the guaranty claim. Id. at 380, 81 S.Ct. at 1559. It gave the lender the option of selling any property it purchased at or below this minimum amount to the Veterans' Administration for the specified minimum amount. Id. at 380, 81 S.Ct. at 1559. If the Administrator did not specify a minimum amount, the lender was to credit the net proceeds of the sale against the guaranty. Id.
 
 
 35
 The Court found that this complex, comprehensive scheme,
 
 
 36
 while intended to remedy the same abuses at which the Pennsylvania Deficiency Judgment Act is directed, is, of course, inconsistent with the Pennsylvania procedures which provide for a judicial determination of the amount to be credited against an outstanding debt and do not obligate the guarantor to purchase the mortgaged property at its judicially determined value.
 
 
 37
 Id. at 380-81, 81 S.Ct. at 1559-60. Because of the inconsistency, the Court concluded, "We have no doubt that this regulatory scheme, complete as it is in every detail, was intended to provide the whole and exclusive source of protection of the interests of the Veterans' Administration as guarantor and was, to this extent, meant to displace inconsistent state law." Id. at 381, 81 S.Ct. at 1560 (emphasis added); see also Fidelity Fed. Savings & Loan v. de la Cuesta, 458 U.S. 141, 153, 102 S.Ct. 3014, 3022, 73 L.Ed.2d 664 (1982) ("[W]here Congress has not completely displaced state regulation in a specific area, state law is nullified to the extent that it actually conflicts with federal law.").
 
 
 38
 Unlike the regulation in Shimer, the regulations at issue here do not provide a scheme for foreclosure "complete in every detail." While the regulations provide for an independent right of indemnity, they do not establish specific foreclosure procedures. In contrast to the tightly woven regulation addressed in Shimer, the regulations addressing foreclosure procedures are a loose framework that takes its substance and specificity from applicable state or local laws. See, e.g., 38 C.F.R. Secs. 36.4315(b)(2), 36.4319, 36.4320, 36.4323(c). They therefore do not indicate an intent to displace applicable state law, as did the regulations in Shimer.
 
 
 39
 Also unlike the Pennsylvania statute addressed in Shimer, the state statutes at issue in this case do not actually conflict with the federal regulations. If lenders proceed by judicial foreclosure under Wash.Rev.Code Ann. Sec. 61.12.040 (1961), they retain the right to seek a deficiency judgment. Wash.Rev.Code Ann. Sec. 61.12.070 (1961). Because the VA is entitled to subrogation under federal law, the application of state law does not compromise the federal protection of the VA's ability to proceed personally against the debtor.
 
 
 40
 The VA argues that our interpretation of Shimer in United States v. Rossi, 342 F.2d 505, 506 (9th Cir.1965), enables it to choose the non-judicial foreclosure alternative under Washington law, but nevertheless proceed personally against the debtor by exercising its indemnity right under federal law. In Rossi, the veteran transferred his mortgage to a third party but remained liable on the note. Id. When the third party defaulted, the lender foreclosed without notifying the veteran. The VA then attempted to collect against the veteran, who argued that the failure to comply with state notice requirements precluded a judgment against it. Id. In finding the veteran liable for the deficiency, we stated,
 
 
 41
 In United States v. Shimer, it was held that the procedures outlined in the regulations governing guaranty procedures were intended by Congress to provide a uniform system for determining the Administrator's obligation as guarantor and to displace state law in their operation, and that they provide an independent right of indemnity to the Veterans Administration, regardless of the failure of a lender's rights against the principal.... Thus the district court's conclusion that this action was one for a deficiency judgment to be governed by the notice and other provisions of California law cannot stand.
 
 
 42
 Id. (citations omitted).
 
 
 43
 The Rossi, opinion did not point out a specific conflict between a state statute and a federal provision.[5] However, California, unlike Washington, precludes lenders from collecting deficiency judgments under any circumstances. See Jones v. Turnage, 699 F.Supp. 795, 799 (N.D.Cal.1988), appeal docketed, No. 89-15053 (9th Cir. Nov. 11, 1989); Cal.Civ.Proc.Code Sec. 580b (West Supp.1990). The California scheme was therefore inconsistent with the federal regulation's protection of the VA's right to proceed personally against the debtor. For this reason, under Shimer, the federal regulation displaced the state law of California, allowing the VA, through its independent indemnity right, to proceed against the debtor. In this case, on the other hand, it is possible for the lender to collect a deficiency under Washington law, by proceeding judicially.
 
 
 44
 The VA's participation in what is, in effect, a choice of remedy under Washington law further distinguishes this case from Rossi. In Rossi, the debtor protested that he did not receive notice of foreclosure as required by state law, and the VA was thus precluded from proceeding against him. 342 F.2d at 506. Yet the VA was not responsible for the lack of notice; the lender, proceeding against the third party in foreclosure, failed to notify the veteran debtor. Id. In contrast, the VA in this case affirmatively instructed Washington lenders to proceed by way of non-judicial foreclosure--choosing a path that precluded the collection of a deficiency under Washington state law.
 
 
 45
 McKnight v. United States, 259 F.2d 540 (9th Cir.1958), also involved California's antideficiency law. The VA sued a veteran to recover its loss after foreclosure on a federally guaranteed mortgage. The veteran claimed the action was one for a deficiency judgment, and was therefore precluded by California's antideficiency law. We found the VA's claim valid on the basis of its right to indemnity.
 
 
 46
 There was a finding below that the facts of this case establish that defendant herein was sued on his independent contract of indemnity and not for any deficiency judgment. We need not determine whether West's Ann. California Code of Civil Procedure Sec. 580b does or does not apply....
 
 
 47
 We rely on the general proposition that the subject matter of this litigation arises under the federal law and cannot be impaired by a state statute.
 
 
 48
 Id. at 543-44.
 
 
 49
 Like Rossi, McKnight, is distinguishable in that the California law prevented the collection of a deficiency under any circumstances. While Cal.Civ.Proc.Code Sec. 580b "impaired" the federal interest in protecting the VA, the Washington law at issue in this case does not. It provides a route whereby the VA can foreclose judicially and retain its right to proceed personally against the debtor, consistent with both Washington and federal law.
 
 
 50
 Because it provides an alternative which allows the VA to exercise its primary right to subrogation and receive the full measure of protection without displacing state law, the Washington scheme is consistent with federal law. The federal regulations protect the VA's ability to collect deficiencies remaining after foreclosure by providing both a right to subrogation and a right to indemnity. 38 C.F.R. Sec. 36.4323. The VA's primary right against the debtor is the statutory right to subrogation. When a state antideficiency law precludes collection by way of subrogation, the VA may exercise its independent indemnity right, which displaces the effect of state law. Rossi, 342 F.2d at 506; McKnight, 259 F.2d at 543.
 
 
 51
 Washington's two paths to foreclosure, see Wash.Rev.Code Ann. Secs. 61.12.040, 61.24.040 (1961 & Supp.1989); Donovick v. Seattle-First Nat'l Bank, 111 Wash.2d 413, 757 P.2d 1378, 1381 (1988) (Dore, J., dissenting), permit the VA to exercise its primary right to subrogation, proceed personally against the debtor, and be made completely whole. Thus, there is no need for the VA to resort to the right to indemnity provided in the federal regulations.
 
 
 52
 It is appropriate to adopt this consistent state scheme as the federal rule of decision. See United States v. Kimbell Foods, Inc., 440 U.S. 715, 728-29, 99 S.Ct. 1448, 1458-59, 59 L.Ed.2d 711 (1979). Because the VA directs the lender's choice between the two methods available in Washington, it is in complete control of its ability to be made whole. Given the availability of the judicial foreclosure alternative, which allows the VA to exercise its primary right to subrogation and proceed directly against the debtor, the VA may not choose the non-judicial foreclosure alternative, and then resort to its right to indemnity. The federal statutory and regulatory scheme contemplates reliance on state foreclosure procedures. Where state procedures preclude holding the debtor personally liable, the VA retains its right to do so by way of indemnity. Where, as in the state of Washington, state foreclosure procedures afford the VA identical protections, there is no conflicting state law to displace.
 
 C
 
 53
 Developments in the law subsequent to Shimer and Rossi support this result. The Supreme Court has acknowledged that federal regulations as well as federal statutes can preempt state law, but it has been reluctant to infer preemption solely from the comprehensiveness of a regulatory scheme. See Hillsborough County v. Automated Medical Laboratories, 471 U.S. 707, 717-18, 105 S.Ct. 2371, 2377, 85 L.Ed.2d 714 (1985); Siuslaw Concrete Constr. Co. v. Washington Dep't of Transp., 784 F.2d 952, 957 (9th Cir.1986). Rather, state laws remain effective if consistent with federal legislation. See Hillsborough, 471 U.S. at 713, 105 S.Ct. at 2375. As in Hillsborough and Siuslaw, the state legislation at issue in this case does not directly conflict with the federal provisions.
 
 
 54
 In the context of other federal lending programs, this circuit has become increasingly protective of states' interests in applying antideficiency laws. Early cases rejected the application of state laws.[6] However, in United States v. MacKenzie, 510 F.2d 39 (9th Cir.1975) (en banc), we upheld the application of a state antideficiency law in foreclosure on a Small Business Administration (SBA) loan. While we did not expressly overrule Stadium Apartments, see id. at 42 n. 4, we distinguished it on the ground that SBA loans were individually negotiated, unlike the form FHA and VA loans in Stadium Apartments and Branden, respectively. Id. at 42.
 
 
 55
 We subsequently held state laws providing debtors rights of redemption and defenses to claims arising from default applicable to SBA loans. See Great Southwest Life Ins. Co. v. Frazier, 860 F.2d 896 (9th Cir.1988) (upholding debtor's right to assert defense provided by Idaho law to SBA's claims against her); Dupnik v. United States, 848 F.2d 1476 (9th Cir.1988) (upholding application of Arizona redemption rights upon foreclosure of SBA loan); United States v. Crain, 589 F.2d 996, 999-1000 (9th Cir.1979) (upholding debtors' right to assert defense provided by Arizona law to SBA's claim against them and citing MacKenzie, 510 F.2d at 41-42); see also United States v. Ellis, 714 F.2d 953 (9th Cir.1983) (upholding application of Washington law providing for redemption rights in foreclosure on Farmers Home Administration loan). In United States v. Stewart, 523 F.2d 1070 (9th Cir.1975), a case involving an individually-negotiated VA loan,[7] we followed MacKenzie and held that the California law applied to prevent collection of a deficiency.[8] Id. at 1072.
 
 
 56
 These cases evidence this court's increased willingness to recognize the application of state law in the context of federal programs. The shift in our analysis has been prompted, to some degree, by the Supreme Court's decision in United States v. Kimbell Foods, Inc., 440 U.S. 715, 728-29, 99 S.Ct. 1448, 1458-59, 59 L.Ed.2d 711 (1979).[9] In Kimbell Foods, the Court held that in some circumstances, state law provides the appropriate federal rule for decision. When no distinct federal statute or properly promulgated regulations apply and displace existing state law, the courts must decide either to adopt state law or to fashion a federal rule, looking to: "(1) whether the issue requires 'a nationally uniform body of law'; (2) 'whether application of state law would frustrate specific objectives of the federal programs'; and (3) whether 'application of the federal rule would disrupt commercial relationships predicated on state law.' " Mardan Corp. v. C.G.C. Music, Ltd., 804 F.2d 1454, 1458 (9th Cir.1986) (quoting Kimbell Foods, 440 U.S. at 728-29, 99 S.Ct. at 1458-59). Applying the Kimbell Foods test in this case demonstrates that the Washington foreclosure law is the appropriate federal rule of decision for VA loans made in that state.
 
 
 57
 The VA argues that the VA loan guaranty program is national in scope and provides uniform procedures, including uniform guaranty agreements. However, the VA regulations themselves contemplate application of state law to foreclosure procedures. See 38 C.F.R. Secs. 36.4315(b)(2), 36.4319, 36.4320, 36.4323(c); United States v. MacKenzie, 510 F.2d 39, 43 (9th Cir.1975) (Ely, J., and Browning, J., concurring). Cf. Kimbell Foods, 440 U.S. at 730-31, 99 S.Ct. at 1459-60. Because federal law does not provide a federal foreclosure procedure, but rather relies upon foreclosure procedures under various state statutes, it appears that Congress saw no need for "a nationally uniform body of law."[10] Id. at 728, 99 S.Ct. at 1458.
 
 
 58
 Adopting the Washington law does not "frustrate specific objectives of the federal program." Id. The remedy provided by the federal statute is subrogation, which allows the VA to pursue whatever rights a lender has, including proceeding personally against debtors to collect deficiencies remaining after foreclosure. 38 U.S.C.A. Sec. 1832. To protect the VA's right to proceed personally against the debtor when state antideficiency laws bar collection through subrogation, the federal regulations provide for an additional right to indemnity. 38 C.F.R. Sec. 4323(e). When the VA is unable to exercise its primary right to subrogation, the right to indemnity granted by the regulations comes into play. The Washington law provides a foreclosure method under which the VA may exercise its primary right to subrogation and obtain the full protection available under the federal statute.[11] Adopting this law as the federal rule of decision, then, does not frustrate federal objectives.
 
 
 59
 The VA claims that forcing it to elect judicial foreclosure will increase its administrative costs. "The fact that increased costs may result from the adoption of state law regarding debtor and creditor rights is not controlling. Both the Supreme Court and this court have adopted state law despite added costs to loan programs when state law did not jeopardize other federal interests." United States v. Ellis, 714 F.2d 953, 955 (9th Cir.1983) (citing Kimbell Foods, 440 U.S. at 740, 99 S.Ct. at 1464; Yazell v. U.S., 382 U.S. 341, 352-57, 86 S.Ct. 500, 506-09, 15 L.Ed.2d 404 (1966); Crain, 589 F.2d at 999-1000; MacKenzie, 510 F.2d at 42). Indeed, the VA has instructed lenders in Washington to proceed by way of judicial foreclosure during the pendency of this suit.[12]
 
 
 60
 Allowing the VA to ignore Washington law "would disrupt commercial relationships predicated on state law." Kimbell Foods, 440 U.S. at 729, 99 S.Ct. at 1459. In adopting the dual foreclosure scheme, the Washington legislature balanced the debtors' and lenders' rights. See Donovick v. Seattle-First Nat'l Bank, 111 Wash.2d 413, 757 P.2d 1378, 1379-80 (1988) (en banc). "Non-judicial foreclosure obviously provides significant advantages to a creditor seeking to liquidate security for a defaulted loan; these advantages have been conferred by the legislature in return for the creditors' relinquishment of the right to obtain a deficiency judgment." United States v. Vallejo, 660 F.Supp. 535, 538 (W.D.Wash.1987). Allowing the VA to instruct lenders to foreclose non-judicially under Washington law, and then use its federal right to indemnity to override the consequences of that instruction, circumvents the balance the state legislature intended in designing and adopting the two foreclosure options.
 
 Conclusion
 
 61
 Although we disagree with the district court's determination that the VA has no right to indemnity, the court correctly held that the VA may not proceed personally against the debtor when it instructs the lender to foreclose nonjudicially under Washington law. Because the Washington scheme is consistent with the federal statutes and regulations, we adopt it as the federal rule of decision. The remedies available to the VA through judicial foreclosure were consistent with federal objectives. The VA, however, chose to instruct lenders to proceed by non-judicial foreclosure, and it was bound by the results of that choice as mandated by the federal rule of decision.
 
 
 62
 AFFIRMED.
 
 
 
 *
 Edward J. Derwinski, Secretary of the Department of Veteran Affairs, is substituted for his predecessor, Thomas Turnage, former Administrator of the Veterans Administration. Fed.R.App.P. 43(c)(1)
 
 
 **
 The U.S. Department of Veteran Affairs was previously the U.S. Veterans Administration. Fed.R.App.P. 43(b)
 
 
 [1]
 The class is composed of
 all Veterans or widows of Veterans or other individuals eligible for home loan guarantees or insurance provided pursuant to Title 38, United States Code, Chapter 37, against whom a claim has been or will be made by the United States, pursuant to 38 C.F.R. 36.4323(e) or pursuant to a written indemnity agreement, which claim has been or will be generated because of a claim paid by the United States to a lender who submitted such claim to the United States because of a non-judicial foreclosure conducted in the State of Washington and in accordance with Chapter 61.24 Revised Code of Washington.
 Whitehead v. Turnage, 701 F.Supp. 795, 796 (W.D.Wash.1988).
 
 
 [2]
 The VA does not participate in the actual foreclosure proceeding unless the lender is not reasonably diligent. 38 C.F.R. Sec. 36.4319(f)
 
 
 [3]
 The Veterans' Benefits Amendments of 1989, Pub.L. No. 101-237, 103 Stat. 2062, amend 38 U.S.C. Sec. 1803 to provide:
 [A]n individual who pays a fee under section 1829 of this title, or who is exempted under section 1829(c)(1) of this title from paying such fee, with respect to a housing loan guaranteed or insured under this chapter that is closed after December 31, 1989, shall have no liability to the Secretary with respect to the loan for any loss resulting from any default of such individual except in the case of fraud, misrepresentation, or bad faith by such individual in obtaining the loan or in connection with the loan default.
 Id. at Sec. 304(a), 103 Stat. at 2073. As a result of the new legislation, our decision in this case will only impact veterans whose loans closed prior to December 31, 1989.
 
 
 [4]
 Compare 38 C.F.R. Sec. 36.4323(a), (e) (1989), with former regulations 38 C.F.R. Secs. 4043(a), 4044, cited in Decisions of the Administrator of the Veterans' Administration, No. 625 at 1154, 1157 (Jan. 22, 1945). The original regulations stated "a debt due" instead of "a debt owing." In addition, the original regulations state that no creditor release will impair the VA's rights, "by virtue of the lien, or otherwise." 38 C.F.R. Sec. 4043(a). The regulations now provide that no release will impair the VA's rights "with respect to the debtor's obligation." 38 C.F.R. Sec. 36.4323(a) (1989)
 
 
 [5]
 See United States v. Whitney, 602 F.Supp. 722, 727-28 n. 2 (W.D.N.Y.1985) (Rossi questioned for failing to point out any express conflict between state and federal law and "evidently proceeding on the assumption that federal preemption of this field was complete.")
 
 
 [6]
 In United States v. Stadium Apartments, 425 F.2d 358 (9th Cir.), cert. denied, 400 U.S. 926, 91 S.Ct. 187, 27 L.Ed.2d 185 (1970), we held that a state redemption law did not apply upon foreclosure by the Federal Housing Authority (FHA) of a mortgage it guaranteed. See id. at 362 (citing Shimer, 367 U.S. 374, 81 S.Ct. at 1554; Rossi, 342 F.2d 505; McKnight, 259 F.2d at 543-44). In Branden v. Driver, 441 F.2d 1171 (9th Cir.1971), we relied on Stadium Apartments and found that California's antideficiency law did not bar federal collection of a deficiency remaining after foreclosure of a VA loan
 
 
 [7]
 The parties struck out a paragraph on the standard VA loan form, which read, in part: "Title 38, United States Code and the Regulations issued thereunder shall govern the rights, duties and liabilities of the parties hereto...." They retained the paragraph which stated, "This Deed shall be construed according to the laws of the State of California." Stewart, 523 F.2d at 1071-72
 
 
 [8]
 In both Stadium Apartments and Stewart, we emphasized the individual character of the loans at issue. We subsequently rejected the argument that this factor was dispositive, stating that "individual negotiation is not critical to our determination...." Ellis, 714 F.2d at 957 (citing Crain, 589 F.2d at 1000)
 
 
 [9]
 Great Southwest, 860 F.2d at 900, and Dupnik, 848 F.2d at 1479, both explicitly utilized a Kimbell Foods analysis. Crain, 589 F.2d at 999-1000, did not cite Kimbell Foods, but used a similar analysis in concluding that the Arizona law should be adopted as the federal rule of decision
 
 
 [10]
 In the Veterans' Benefits Amendments of 1989, Pub.L. No. 101-237, Sec. 304, 103 Stat. 2062, 2073 (to be codified at 38 U.S.C. Sec. 1803), Congress provided a uniform national rule for the collection of deficiency judgments. For loans closed after December 31, 1989, veterans are not liable for deficiencies resulting from default in the absence of fraud, misrepresentation, or bad faith. Id
 This change reflects Congress' recognition that, under the former legislation, the various state schemes applied, with varying results as to the collection of deficiency judgments. Although Congress apparently has decided that a uniform federal rule is necessary prospectively, the fact that it did not make the new legislation retroactive implies that under the legislation applicable in this case, it did not see a pressing need for a uniform federal rule.
 
 
 [11]
 The California law at issue in Jones v. Turnage, 699 F.Supp. 795, 799 (N.D.Cal.1988), appeal docketed, No. 89-15053 (9th Cir. Nov. 11, 1989), did not give the VA this choice. See Cal.Civ.Proc.Code Sec. 580b (West Supp.1990)
 
 
 [12]
 The veterans also argue that Congress' abrogation of the VA's right to collect deficiencies in the amendments is evidence that the funds raised by these collections are neither critical nor substantial. See Veterans' Benefits Amendments of 1989, Pub.L. No. 101-237, Sec. 304, 103 Stat. 2062, 2073 (to be codified at 38 U.S.C. Sec. 1803). However, the new legislation is more accurately read as a trade-off: the VA gives up its right to collect deficiencies, and, in exchange, the veterans pay higher loan fees. See id. at Sec. 303, 103 Stat. at 2071-73 (to be codified at 38 U.S.C. Sec. 1829)