**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Charles DAVIS, individually and on behalf of all others similarly situated, Defendant/Third–Party Plaintiff–Appellee,**

v.

**Edward DERWINSKI, or his successor, Administrator of the Veterans Administration, Third–Party Defendant–Appellant.**

**No. 91–1678.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1992.

Decided April 3, 1992.

Order, April 20, 1992. Rehearing and Rehearing En Banc Denied
May 18, 1992.

John E. Fryatt, U.S. Atty., Chris R. Larsen, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., Mark Stern, Malcolm L. Stewart (argued), Department of Justice Civ. Div., Appellate Section and Ann Southworth, U.S. Atty., Department of Justice, Civ. Div., Washington, D.C., for the U.S. and Edward Derwinski, or his successor, Administrator of the Veterans Administration.

David Leen (argued), Leen & Moore, Seattle, Wash. and Charles H. Barr, Milwaukee, Wis., for Charles Davis, individually and on behalf of all others similarly situated.

Alan Lee and James E. Doyle, Atty. Gen., Office of the Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., for the State of Wis.

Before CUDAHY and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Wisconsin's real estate foreclosure law allows lenders to choose between two different foreclosure routes. Route one gives the borrower a long redemption period but allows the lender to preserve its right to collect a deficiency judgment from the borrower. Route two provides for expedited foreclosure but requires the lender to forego its right to a deficiency judgment. This case involves an attempt by the Department of Veterans' Affairs (VA) to exercise its federal indemnity right to seek reimbursement from a veteran for a loan guaranty payment the VA made to a private lender on the veteran's behalf after the veteran's property was foreclosed by the lender. The question is whether the VA retains its federal indemnity right even though it allows a lender to choose route two, that is, expedited foreclosure and waiver of deficiency. For the reasons below, we hold that the VA may exercise its indemnity right to seek reimbursement for guaranties paid pursuant to its legal obligation. Accordingly, we reverse the injunction the district court entered to prohibit the VA from collecting such reimbursement and remand for further proceedings consistent with this opinion.

## I. FACTS

Two statutory schemes, the VA's home loan program and Wisconsin's foreclosure law, are pertinent to this case. We discuss each in turn. Under the VA's nationwide loan guaranty program, the VA has provided housing assistance to qualified veterans since 1944 by guaranteeing home loans made to veterans by private lenders. *See* Title III of the Servicemen's Readjustment Act of 1944, Pub.L. No. 346, 58 Stat. 284, 291 (codified as amended at 38 U.S.C. §§ 1801–33) [hereinafter Servicemen's Readjustment Act].[1] The VA has promulgated regulations governing all aspects of its loan guaranty program. *See* 38 C.F.R. part 36 (1988). Veterans are charged a one percent guaranty fee for a VA loan pursuant to 38 U.S.C. § 1829(a). In return, they are guaranteed a maximum interest rate that is usually below the market rate, *see* 38 U.S.C. § 1803(c); 38 C.F.R. § 36.4311, as well as limits on closing costs, loan origination, escrow and other fees, *see* 38 C.F.R. § 36.4312. Additionally, lenders usually forego the requirement of a down payment on a VA loan in return for the VA's guaranty. The VA's guaranty, by increasing the private lender's comfort level with the loan, induces them to make loans (or offer terms) which they otherwise might decline.

If a veteran defaults on loan payments, the lender[2] may foreclose on the property. The VA regulations do not set forth a foreclosure procedure; foreclosure is effected according to the law of the state in which the property is located. *See* 38 U.S.C. § 1820(a)(6); 38 C.F.R. §§ 35.4319, 36.4320. The lender must give the VA thirty days' notice before beginning foreclosure proceedings. 38 C.F.R. § 36.4317. The VA then has fifteen days in which to give the lender instructions regarding the foreclosure proceeding. 38 C.F.R. § 36.-4324(f). If the lender forecloses in accord-

---

**1.** The issue we face in this case will not likely arise for veterans whose loans were closed after December 31, 1989. Veterans who pay an increased guaranty fee, and whose loans are closed after December 31, 1989, will not be liable to the VA for any loss resulting from a default on such loan, except in the case of fraud, misrepresentation or bad faith in obtaining the loan or in connection with the default. The Veterans' Benefits Amendments of 1989, H.R. 901, Pub.L. No. 101–237, § 304. These amendments raised the loan fee required by 38 U.S.C. § 1829 from one percent to 1.25 percent of the loan amount for veterans. Congress has since increased the fee to 1.875 percent for loans closed between November 1, 1990 and September 30, 1991. *See* Omnibus Budget Reconciliation Act of 1990, Pub.L. No. 101–508, § 8032.

These and subsequent amendments have renumbered many of the statutory sections applicable in this case. Our citations are to the statutes applicable here rather than as renumbered.

**2.** We use the term "lender," rather than mortgagee or holder, throughout this opinion for simplicity, although we recognize that the party foreclosing may not be the original lender because that lender may assign the mortgage before foreclosure. Similarly, we use the term "veteran" rather than "borrower" or "obligor" for simplicity, although we recognize that at the time of foreclosure the person being foreclosed upon may be the veteran's beneficiary or assignee.

ance with the VA's instructions,[3] and a deficiency[4] remains after the sale of the property, the VA must reimburse the lender up to the amount of its guaranty. 38 C.F.R. § 36.4321.

Veterans participating in the VA program sign a contract with the VA that establishes the VA's right to seek reimbursement from the veteran for any payments the VA must make to private lenders pursuant to its guaranty of the veteran's loan. This guaranty agreement is governed by federal law.[5] The federal regulations adopted pursuant to this law provide two alternative courses by which the VA may recover from the veteran the amount paid on the guaranty. First, the VA becomes subrogated to the rights of the lender and can pursue any causes of action the lender might have had against the defaulting veteran. 38 U.S.C. § 1832; 38 C.F.R. § 36.4323(a). Under this subrogation right, the VA's rights are strictly derivative from the lender's rights. If, for instance, the lender could collect a deficiency judgment from the veteran, then the VA could step into the shoes of the lender and do so as well. Of course, if the lender's rights to a deficiency judgment against the

veteran fail, then the VA's rights through subrogation fail as well. Second, the VA may pursue its indemnity right under its guaranty contract with the veteran to recover any amounts paid on the guaranty. 38 U.S.C. § 1832; 38 C.F.R. § 36.4323(e).[6] This indemnity right is a contractual one, arising directly from the contract between the veteran and the VA rather than deriving from the lender/veteran relationship.

Aside from these federal rights, Wisconsin's foreclosure law is also relevant to this case. Wisconsin law provides two statutory mechanisms by which a lender may foreclose on the mortgaged property of a debtor who is in default. The lender may demand in his complaint of foreclosure that judgment be rendered "for any deficiency which may remain due to him after sale of the mortgaged premises...." Wis.Stat. § 846.04. If the lender proceeds under this section, the debtor is given twelve months to redeem the property.[7] Alternatively, the lender may choose expedited foreclosure if the borrower has previously so agreed. Under this route, the lender "may elect by express allegation in the complaint to waive judgment for any deficiency which

---

**3.** A lender's noncompliance with the VA's instructions affects the VA's rights vis-a-vis the veteran. *See United States v. Church,* 736 F.Supp. 1494 (N.D.Ind.1990). We put this issue aside for the moment. *See post* pp. 610–611.

**4.** A deficiency refers to that amount which is the difference between the amount due on a defaulted home loan after foreclosure (including costs incurred in the foreclosure process) and the net amount realized from the sale of the security for the loan (usually the home itself). *See, e.g.,* Wis.Stat. § 846.165.

**5.** The VA's indemnity agreement with the veteran may appear in one of two forms. When the loan application is processed automatically by the lender, the indemnity agreement is set forth on VA Form 26–1820. When the veteran and the lender apply jointly for a guaranty (as did Davis), the agreement is set forth in VA Form 1802a, the "VA Application for Home Loan Guaranty." This form provides:

[T]he undersigned veteran and lender hereby apply to the Administrator of Veterans' Affairs for Guaranty of the loan described here under Section 1810, Chapter 37, Title 38, United States Code to the full extent permitted by the veteran's available entitlement and severally agree that the Regulations promulgated

pursuant to Chapter 37, and in effect on the date of the loan shall govern the rights, duties, and liabilities of the parties.

**6.** 38 C.F.R. § 36.4323, entitled "Subrogation and indemnity," provides in relevant part:

(a) The Secretary shall be subrogated to the contract and the lien or other rights of the holder to the extent of any sum paid on a guaranty or on account of an insured loss, which right shall be junior to the holder's rights as against the debtor or the encumbered property until the holder shall have received the full amount payable under his contract with the debtor. No partial or complete release by a creditor shall impair the rights of the Secretary with respect to the debtor's obligation....

(e) Any amounts paid by the Secretary on account of the liabilities of any veteran guaranteed or insured under the provisions of 38 U.S.C. Chapter 37 shall constitute a debt owing to the United States by such veteran....

**7.** The redemption period is the period between the judgment of foreclosure and the foreclosure sale. During this time, the mortgagor may avoid the sale of the property by repaying the outstanding indebtedness.

may remain due to [him] after sale of the mortgaged premises," in which case a six-month redemption period applies. Wis. Stat. § 846.101.[8] It is this second route with which we are primarily concerned.

Charles Davis is a veteran of the United States Navy who bought a home in Wisconsin through the VA's loan guaranty program. When Davis purchased his home, he executed loan documents and a mortgage with a private lender as well as a guaranty agreement with the VA. When Davis defaulted on his home loan, the lender foreclosed on his property pursuant to the second, expedited route as permitted by Davis' mortgage agreement. The lender subsequently sold Davis' property at a foreclosure sale for less than the outstanding balance on Davis' loan. Thus, a deficiency of approximately $23,000 remained. Because the VA had contractually guaranteed Davis' loan for more than the remaining deficiency, the VA reimbursed the lender for the entire deficiency pursuant to its guaranty of Davis' loan. The VA then sought recovery of that amount from Davis under its federal indemnity right.[9]

In response to the VA's attempted recovery, Davis denied liability and filed a third-party class action complaint against Edward Derwinski, the Secretary of Veterans Affairs, challenging the VA's right to recover payments it has made pursuant to its loan guaranties. Davis asserts that just as the VA lost its subrogation right when the lender foreclosed under section 846.101, it also lost its indemnification right. He argues that the VA was required to direct the lender to foreclose under section 846.04, rather than section 846.101, if it wanted to preserve its indemnification right. After both Davis and the VA filed cross-motions for summary judgment, the district court agreed with Davis, essentially finding that the VA was "estopped" from

asserting its indemnity right when it allowed a lender to foreclose under section 846.101. The district court entered an order which certified the class and subclasses proposed by Davis, denied the VA's motion for summary judgment, granted summary judgment for one of Davis' subclasses, permanently enjoined the VA from collecting indemnity payments from any veterans whose property was foreclosed pursuant to section 846.101, and ordered the VA to refund indemnity payments previously collected. Based on that injunction, the United States and Derwinski appealed. *See* 28 U.S.C. § 1292(a).

## II. DISCUSSION

■ We do not write on a clean slate in this case. First, the VA has long interpreted its enabling legislation, *see* Servicemen's Readjustment Act § 504, as providing it a federal indemnity right that is unaffected by state foreclosure law. *See* Decisions of the Administrator of Veterans' Affairs, No. 625 at 1154 (Jan. 22, 1945); 38 C.F.R. § 36.-4323(e); *see also* VA Form 26–1820; VA Form 26–1820a. The VA's interpretation of the statute is controlling unless "plainly erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945). Second, the Supreme Court has previously considered, and upheld, the VA's right of indemnity against veterans for amounts it must pay lenders pursuant to its guaranty obligation. In *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), the Supreme Court considered the VA's home loan program and upheld the validity of the VA's independent right of indemnification under section 36.4323(e). In *Shimer*, as in this case, the VA sought to collect monies from a veteran pursuant to its indemnity right rather than its subrogation right

---

8. Section 846.101 reads in relevant part:
   [T]he plaintiff in a foreclosure action of a mortgage ... may elect by express allegation in the complaint to waive judgment for any deficiency which may remain due to the plaintiff after the sale of the mortgaged premises against every party who is personally liable for the debt secured by the mortgage.

9. Because the lender had foreclosed Davis' property under section 846.101, it had waived its right to a deficiency. Thus, the VA's subrogation right, which allows it to step into the lender's shoes, would not have provided the VA an effective collection route.

(recognizing in both cases that its subrogation rights were ineffectual because the lender had not preserved its rights to a deficiency judgment against the veteran). The lender in *Shimer*, after purchasing the property at a judicial sale, failed to file a petition to fix the fair market value of the foreclosed property pursuant to the Pennsylvania Deficiency Judgment Act. According to the Pennsylvania statute, this failure permanently discharged both the debtor and the guarantor from liability on the debt. The Third Circuit looked to this state law and determined that the VA was thus not obligated to pay the lender on its guaranty. Applying basic principles of surety law, the court held that the VA could not recover from its principal, Shimer, any amount it was not obligated to pay the lender on his behalf. *See United States v. Shimer*, 276 F.2d 792 (3d Cir. 1960).

The Supreme Court reversed the Third Circuit's decision, holding that the application of state law to determine the VA's obligation to the lender was inconsistent with the applicable regulations prescribed by the VA to compute guaranty claims. *Shimer*, 367 U.S. at 377–81, 81 S.Ct. at 1557–60 (discussing 38 C.F.R. § 36.4321). The Court stated that it had "no doubt that this regulatory scheme, complete as it is in every detail, was intended to provide the whole and exclusive source of protection of the interests of the [VA] as guarantor and was, to this extent, meant to displace inconsistent state law." *Id.* at 381, 81 S.Ct. at 1559. More significantly, the Court went on to consider Shimer's argument that even though the VA was obligated on its guaranty to the lender, the VA nevertheless had no right to indemnity from him. *See id.* at 386, 81 S.Ct. at 1562. The Court disagreed with Shimer and held that the VA enjoys an "independent right of indemnity." *Id.* at 387, 81 S.Ct. at 1563. "We cannot agree that Congress ... intended to relieve the veteran of direct liability for amounts properly paid on his behalf" by the VA. *Id.* at 386, 81 S.Ct. at 1562. Thus, *Shimer* upheld both the lender's federal right to receive payment from the VA on its guaranty of a veteran's loan and the VA's federal right to indemnity from the veteran for paying the lender on that guaranty.

We think that *Shimer* controls this case and compels us to reverse the district court's order; the VA may exercise its federal indemnity right to seek reimbursement from veterans for guaranty obligations which it was legally obligated to pay, and did pay, lenders. Although the district court found "the pertinent facts of the present case indistinguishable from those in *Shimer*," it held that the "VA is estopped from seeking a deficiency against a veteran under its indemnity agreement when the lender forecloses against the veteran pursuant to Wis.Stat. § 846.101." R. 36 at 14. The district court declined to apply *Shimer* because in *Shimer* the VA was not completely able to control its power to be made whole through subrogation as it arguably is in Wisconsin. Under the Pennsylvania foreclosure scheme, a lender makes an election to pursue a deficiency judgment *after* the foreclosure sale and *after* the VA's guaranty obligation has been established and paid. Thus, the VA had no string with which to control the lender at the time of the lender's election to pursue a deficiency. In Wisconsin, by contrast, the lender makes the election in the foreclosure complaint itself. Thus, in Wisconsin, the VA could require a foreclosing lender to use section 846.04, rather than section 846.101, and thereby preserve its subrogation right. The district court believed that because the VA enjoyed the option of preserving its subrogation right it would be inequitable to permit the VA to forego that right by allowing a lender to foreclose under section 846.101, but then nonetheless rely on its indemnity right to collect amounts paid on its guaranty from the veteran. Thus, the district court estopped the VA from asserting its indemnity right when the VA allows a lender to foreclose under section 846.101. In so doing, we believe that the district court erred in penalizing the VA for relying on a federal right that the Supreme Court has upheld as a legitimate exercise of the VA's authority to administer the veterans' home loan pro-

gram. *See Shimer,* 367 U.S. at 381–85, 81 S.Ct. at 1559–62.

Simply because the VA could have instructed lenders to proceed under section 846.04, and arguably preserved its subrogation rights, does not provide us authority for insisting that it take that course of action. There is no textual basis in the statute and regulations governing the VA's home loan program that compels us to force the VA to privilege its subrogation right over its indemnification right. Moreover, in *Shimer,* the Supreme Court gave no indication that the VA's federal indemnity right was subject to qualification depending upon whether the VA's subrogation right was available. *See Shimer,* 367 U.S. at 386–88, 81 S.Ct. at 1562–63. Davis argues, however, that we should follow a recent decision of the Ninth Circuit and hold, as did that court, that the VA has a right to indemnity only when state law always bars the lender, and thereby the VA through subrogation, from recovering a deficiency against the veteran. *Whitehead v. Derwinski,* 904 F.2d 1362, 1369 (9th Cir. 1990). The Ninth Circuit required the VA to rely upon its subrogation right rather than its indemnity right when it could ensure that its subrogation right was protected. *Id.* Although we concede that the

facts of this case and those in *Whitehead* are materially indistinguishable, we respectfully disagree with the analysis employed by the Ninth Circuit in that case. First, the Ninth Circuit characterizes the VA's subrogation right as "primary" without providing any authority for that proposition. *See id.* ("Given the availability of the judicial foreclosure alternative, which allows the VA to exercise its primary right to subrogation and proceed directly against the debtor, the VA may not ... resort to its right to indemnity."). As we have noted above, we discern no fair support for characterizing the VA's subrogation right as "primary" and thus respectfully decline to follow our Ninth Circuit colleagues. The only other circuit to consider the issue before us has likewise declined to follow *Whitehead. See Vail v. Derwinski,* 946 F.2d 589, 591–92 (8th Cir.1991) ("No rationale exists" for *Whitehead's* conclusion that the VA's indemnity right was essentially a backup for subrogation). Likewise, we think it unwise to follow the path laid down in dicta by the Ninth Circuit in *Whitehead* and speculate on whether the Supreme Court would significantly limit *Shimer* because of an evolved conception of federal-state relations.[10] *See White-*

---

**10.** Moreover, it not necessary for us to perform a "preemption" analysis in this case as did *Whitehead* in dicta. *See Whitehead,* 904 F.2d at 1369–72. A further reason for our holding that Wisconsin's statutory restrictions on deficiency judgments do not preclude the VA's suit for indemnification against Davis is that it is by no means clear that the Wisconsin statute at issue even applies to relationships between a debtor and third parties such as guarantors. Section 846.101 by its terms speaks of the "plaintiff's" election of remedies and consequent waiver of rights. *See* Wis.Stat. § 846.101. The "plaintiff" in Davis' foreclosure action was the lender, not the VA. This will usually be the case, as the VA does not itself prosecute foreclosure actions unless the lender fails to exercise reasonable diligence in foreclosing. *See* 38 C.F.R. § 36.-4319(f). Neither party was able to locate any Wisconsin case law addressing this question. Our own search of Wisconsin's case law has likewise yielded no clear guidance. In the only recent case to address section 846.101, the Wisconsin Supreme Court noted without deciding that the party waiving its right to a personal deficiency under section 846.101 is the *mortgagee. See Glover v. Marine Bank of Beaver Dam,*

117 Wis.2d 684, 345 N.W.2d 449, 456 (1984) ("This [section 846.101's] protection comes in the form of a waiver of personal deficiency by the mortgagee."). Thus, for us to reach the question of whether the VA's regulation preempts section 846.101, we must first assume the two laws conflict. It is unnecessary for us to make this assumption and therefore unnecessary as well for us to embark on a preemption analysis. *Accord Vail,* 946 F.2d at 592 (VA's indemnity right upheld despite VA's acquiescence in lender's use of expedited foreclosure proceeding because Minnesota law affirmatively recognizes that rights of third parties under contracts of guaranty survive anti-deficiency laws; no preemption analysis necessary to decide case).

The State of Wisconsin filed a brief in this case as amicus curiae. We note that Wisconsin does not argue that section 846.101 generally releases guarantors as well as debtors. Rather, Wisconsin expresses two concerns in asking us to affirm the district court. The first is its "interest in the uniform application of its laws to all lenders." Brief for the State of Wisconsin as Amicus Curiae 2. Because the VA is not a lender, but a guarantor, our decision does not disturb any parity among lenders that Wiscon-

*head,* 904 F.2d at 1369–71. The Supreme Court has consistently discouraged courts of appeal against such an approach: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989). We believe that *Shimer* is directly applicable to this case and therefore choose to follow its lead in sustaining the VA's independent federal indemnity right.

Davis next presses the theory that regardless of whether we find *Whitehead's* reasoning persuasive, equity provides us with a basis on which to uphold the district court's injunction against the VA. Put differently, Davis accuses the VA of reaping the benefits of Wisconsin's expedited foreclosure law while disavowing its burdens—an option not available to lenders in Wisconsin. While we agree with Davis that the VA may enjoy rights in addition to those that lenders enjoy, we think that Davis' comparison between the VA and *lenders* misses the mark. The VA is not a lender; it is a guarantor. Moreover, it is a guarantor under a comprehensive federal program specifically designed to regulate the VA/lender and VA/veteran relationships. The VA home loan program establishes a separate federal scheme for determining the "benefits and burdens" of both the VA/lender and VA/veteran relationships. State law is left to regulate the lenders' and veterans' rights as against each other. *See Farm Credit Bank of*

*Saint Paul v. Lord,* 162 Wis.2d 226, 470 N.W.2d 265, 270 (1991) (right or equity of redemption afforded mortgagor vis-a-vis mortgagee is created solely by state law), *cert. denied,* —— U.S. ——, 112 S.Ct. 440, 116 L.Ed.2d 459 (1991). It is this separate scheme of benefits and burdens that we must uphold, provided it represents a valid exercise of the agency's authority (and Davis does not challenge any of the VA regulations as implemented). *See Shimer,* 367 U.S. at 382, 81 S.Ct. at 1560. Thus, even if the "benefits and burdens" of the VA home loan program are different in kind or degree from those provided non-VA participants, this does not produce inequity between the VA and non-VA participants. There is nothing inequitable in treating differently groups that are not similarly situated. *Cf.* Catharine MacKinnon, *Difference and Dominance* in Feminism Unmodified: Discourses on Life and Law 32–45 (1987) (law often mistakenly equates treating people the same with treating them equally).

Furthermore, Davis premises his equitable argument on the unjustified assumption that veterans are similarly situated to other borrowers in Wisconsin. Again, this is not the case. Davis, like other participants in the VA's home loan program, availed himself of a favorable federal program that is not open to all borrowers. Now, he asks us to treat him "just like everyone else" when he benefitted from not being treated like everyone else in the first place. In addition to the favorable lending terms for veterans explained above, the VA program also provides veterans with various protection in the event of default and foreclosure.[11] Davis signed a guaranty contract with the VA establishing the VA's indemnity right

---

sin seeks to maintain. Wisconsin's second concern is that veterans "may lose part of their other means of support as the VA tries to collect deficiency judgments from veterans' pensions and other federal entitlements." *Id.* While we, too, empathize with the plight of one subject to foreclosure and debt collection, we are constrained to respect the resolution of conflicting policy objectives reached by Congress in establishing the veterans' home loan program as well as the expertise of the VA in carrying out those congressional directives. We decline to turn a loan guaranty program into a "grant of. aid."

*See Shimer,* 367 U.S. at 386, 81 S.Ct. at 1562 ("Relief from liability in these circumstances would convert a guaranty into a grant of aid.").

**11.** The first is an extensively regulated determination of the fair value of the mortgaged property. *See* 38 C.F.R. § 36.4320. Before the VA may collect a debt resulting from its payment of a guaranty, a veteran may challenge the existence or amount of the debt. 38 C.F.R. § 1.911a(c). Additionally, a veteran may request a waiver on the ground that he is not materially at fault and that collection would violate equity and good conscience. 38 U.S.C.

and agreeing that federal law would govern the contract. Although the VA's protection of veterans in the event of foreclosure may be different from that protection Wisconsin has elected to provide its borrowers, it is certainly not for us to say that an extended redemption period would be more fair to veterans than the procedures the VA has promulgated. Furthermore, Davis has not challenged any of the VA's regulations themselves, which of course he would have been free to do. We disagree with Davis that we should prevent the VA from exercising its indemnity right on equitable grounds. Consequently, we find no basis on which to limit *Shimer's* conclusion that the VA's subrogation and indemnification rights are independent, legitimately promulgated, federal rights, *Shimer*, at 386–87, 81 S.Ct. at 1562–63, and thus no basis on which to require the VA to privilege its subrogation right over its indemnification right.

■ Finally, we come to an issue that we set aside at the start of our discussion (*see ante* at n. 3). The district court suggested that the VA may have instructed some lenders in Wisconsin to effect foreclosure by a method that would preserve the personal liability of the debtor, and that some lenders may have ignored the VA's instructions. Under 38 C.F.R. § 36.4324(f), noncompliance with the VA's instructions as to the appropriate method of foreclosure would relieve the VA of liability as guarantor. If the VA pays lenders in this situation despite the lack of any legal obligation to do so, the payment is "gratuitous" and the VA is not entitled to indemnification. *United States v. Church*, 736 F.Supp. 1494, 1497–98 (N.D.Ind.1990). In the present case, the VA interpreted the district court's opinion as agreeing with *Church*. Moreover, the VA states in its brief to this Court that "[we do] not challenge that aspect of the district court's ruling; we argue only that the VA is entitled to indemnification for all guaranty payments that it was legally obligated to make. If this Court

accepts our position, a remand is necessary so that the district court can determine which of the lenders did and did not comply with the applicable regulations." Brief of Appellant at 14. The VA's point is well taken; we remand to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED.

## ORDER

■ On April 3, 1992, our decision in *United States v. Davis*, No. 91–1678, slip op. (7th Cir. April 3, 1992) was published, see page 603, which reversed an injunction entered against the Veteran's Administration (VA) prohibiting the VA from exercising its federal indemnity right to seek reimbursement for guaranties paid on behalf of veterans participating in its VA home loan program. Additionally, we remand the case for further proceedings, including a determination of whether part of the appellee class may be relieved of liability to the VA on the authority of *United States v. Church*, 736 F.Supp. 1494, 1497–98 (N.D.Ind.1990) (holding that under 38 C.F.R. § 36.4324(f), a lender's noncompliance with the VA's instructions releases the VA from its guaranty obligation to the lender, and in turn, also releases the veteran from his obligation to the VA).

Unbeknownst to this panel until April 6, 1992, the appellee class filed a motion to dismiss this appeal as moot on March 30, 1992. The appellee class argues that it is *entirely* composed of individuals who would be released of liability to the VA under *Church.*, thus mooting the appeal on the merits. The motion is based on (1) the VA's admission in its appellate brief (and confirmed during oral argument) that it does not challenge *Church* or its application where appropriate in this case and on (2) "subsequent discovery which has disclosed that all members of the class are entitled to relief pursuant to the VA's admission." Motion of Appellee Class to Dismiss Appeal on Ground of Mootness. The

§ 3102(b) and (c); 38 C.F.R. § 1.911a(c). The veteran is entitled to a hearing on the waiver request and may appeal an adverse decision to the Board of Veterans Appeals. *Id.* The veteran may then seek further review before the

newly created Court of Veterans Appeals and the Court of Appeals for the Federal Circuit. *See* Pub.L. No. 100–687, §§ 301, 402. If a waiver is denied, the veteran may seek to compromise the debt with the VA. 38 C.F.R. § 1.970.

"subsequent discovery" relied upon is a request for admissions recently served on the VA by the appellees, to which appellees' counsel indicates the VA has not responded by the applicable deadline. Appellees' counsel states by way of affidavit that Christian Larsen, the Assistant United States Attorney representing the VA, desires to defer its response to the discovery requests until disposition of the appeal. The appellee class asks us to view the requested admissions, the VA's alleged failure to respond, and its counsel's conversation with Mr. Larsen as an admission by the VA that it has no indemnity rights with respect to any member of the appellee class.

The issue of what portion of the appellee class is covered by *Church* and the VA's concession regarding its application, however, presents a factual question best resolved by the district court. So, too, issues presented by ongoing discovery in this case are best left to the district court to address. In short, appellees' motion asks that we resolve factual issues that are appropriate for the district court to resolve on remand. Accordingly, we direct the district court to consider the issue of the applicability of *Church* to the plaintiff class on remand as instructed in our opinion. See pages 610–611.

