Dale L. CARTER; David A. Johnson; Fred Emery; James R. Straw, on behalf of all in the State of Idaho similarly situated, Plaintiffs–Appellees,

v.

Edward J. DERWINSKI, Secretary of the Department of Veterans Affairs, or his successor, Defendant–Appellant.

No. 91–35530.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted En Banc Sept. 24, 1992 *.

Decided March 4, 1993.

Malcolm L. Stewart, U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

David A. Leen, Leen & Moore, Seattle, Washington, Margaretta Eakin, Portland, OR, for plaintiffs-appellees.

---

* No disposition was entered by the three-judge panel that originally took this case under submission.

Before: HUG, FLETCHER, FARRIS, D.W. NELSON, BEEZER, BRUNETTI, KOZINSKI, NOONAN, THOMPSON, LEAVY and TROTT, Circuit Judges.

KOZINSKI, Circuit Judge:

We took this case en banc to consider whether *Whitehead v. Derwinski*, 904 F.2d 1362 (9th Cir.1990), should remain the law of the circuit.

## Background

In recognition of the debt we owe the men and women who have served in our country's armed forces in time of conflict, the Department of Veteran's Affairs ("VA") offers them home loan guarantees on terms substantially more favorable than those prevailing in the market. *See generally* 38 U.S.C. §§ 3701–3733. When a veteran takes advantage of the VA guarantee program, two legal relationships are established, both of which are governed by federal law. First, the VA promises to reimburse the lender if the veteran defaults, up to the face value of the guarantee. 38 C.F.R. § 36.4321. Second, the veteran promises to reimburse the VA for any amount the VA pays the lender. *Id.* § 36.-4323(e). This is an obligation owed directly to the VA, which it may recover by subrogating itself to any remaining rights of the lender, *id.* § 36.4323(a), or by pursuing an independent right of indemnity against the veteran, *id.* § 36.4323(e).

In the event of default, the lender must follow the VA's instructions, if any, as to the appropriate method and timing of foreclosure. *Id.* § 36.4324(f). Foreclosure of the property is to be done in accordance with state law. *See* 38 U.S.C. § 3720(a)(6). Idaho, like many other states, has a two-tier foreclosure scheme. One option is judicial foreclosure, which requires a judicial determination of the fair market value of the property, to protect the debtor from an unfairly low appraisal. Idaho Code §§ 6–101 *et seq.* The lender may then seek a deficiency judgment for any remaining amount. Alternatively, a lender may foreclose nonjudicially by selling the property on the open market. *Id.* §§ 45–1502 *et seq.* Nonjudicial foreclosures are easier and faster for the lenders than judicial ones. Deficiency judgments are still permitted after nonjudicial foreclosure, but only if a fair market value determination is sought within three months of foreclosure. *Id.* § 45–1512. After that, no further judgments may be collected. *See Tanner v. Shearmire*, 115 Idaho 1060, 1063, 772 P.2d 267, 270 (Ct.App.1989).

Plaintiffs are Idaho veterans who defaulted on their guaranteed loans. They brought a class action to enjoin the VA from collecting deficiency judgments against them following nonjudicial foreclosure where the lender fails to obtain a fair market valuation within three months; they also sought the return of monies previously collected in this manner. On cross-motions for summary judgment, the district court held that the VA had forfeited its right to recover from the veterans. *See Carter v. Derwinski*, 758 F.Supp. 603 (D.Idaho 1991). Relying on our decision in *Whitehead v. Derwinski*, 904 F.2d 1362 (9th Cir.1990), the court held that the VA's primary right of subrogation had been lost through its failure to obtain a fair market valuation after its election of nonjudicial foreclosure. 758 F.Supp. at 608. The court therefore entered judgment for the veterans.

The VA appealed, and a three-judge panel of this court heard oral argument. Recognizing a potential conflict between *Whitehead* and *United States v. Shimer*, 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), the panel withdrew submission; a majority of the nonrecused regular active judges then voted to hear the case en banc, 970 F.2d 662 (9th Cir.1992).

## Discussion

A. *Whitehead v. Derwinski* involved the Washington foreclosure scheme, which is similar to Idaho's. Like Idaho, Washington allows both judicial and nonjudicial foreclosures. Washington permits deficiency judgments after a judicial foreclosure, Wash.Rev.Code Ann. § 61.12.040, but prohibits them altogether after a nonjudicial foreclosure, *id.* §§ 61.24.040, 61.24.-

100. Because judicial foreclosure is much more cumbersome, the VA instructed Washington lenders to foreclose nonjudicially. *Whitehead,* 904 F.2d at 1364. Nonetheless, the VA tried to assert its right of indemnity against the veterans; the veterans sued to prevent the VA from collecting. We held that Washington's prohibition against deficiency judgments after nonjudicial foreclosure wasn't preempted by the VA regulations providing for subrogation and indemnity, and that the VA had lost its right to a deficiency judgment against the veterans.

In so holding, we first decided that the VA possesses a direct right of indemnity independent of its derivative right of subrogation: "Federal regulations governing the loan give the VA a right to indemnity *as well as a right to subrogation derived from the lender's claims.*" 904 F.2d at 1367 (emphasis added). Consistent with this independent right of indemnity, *Whitehead* recognized that a state law prohibiting *all* deficiency judgments would be preempted, because it would eliminate the possibility of recovering from the veteran. *Id.* at 1368–69; *see also Connelly v. Derwinski,* 961 F.2d 129, 130 (9th Cir.1992) (Oregon foreclosure procedure forbidding any deficiency judgment preempted); *Shepherd v. Derwinski,* 961 F.2d 132 (9th Cir.1992) (same for Arizona). At the same time, however, *Whitehead* significantly restricted the scope of this indemnity right by holding the right of subrogation was primary, while the right of indemnity was merely a backstop. 904 F.2d at 1369. So long as the state provided at least one foreclosure route that offered a possibility of a deficiency judgment—even if it made foreclosure more burdensome or costly— the VA's right of subrogation was fully protected and the state scheme wasn't preempted. *Id.* at 1371.

The district court held that *Whitehead* controlled this case. In Idaho, as in Washington, the VA could have instructed lenders to foreclose judicially; moreover, unlike in Washington, the Idaho lenders could also

have preserved their right to a deficiency judgment by obtaining a fair market valuation within three months of nonjudicial foreclosure. The VA therefore forfeited its right to proceed against the veterans by way of indemnity. Under *Whitehead,* we would have to affirm the district court's judgment.

■ B. *Whitehead*'s central assumption—that the VA's right of indemnity is secondary to its primary right of subrogation—warrants scrutiny. The relevant statute provides that "[i]n the event of default ... the Secretary shall be subrogated to the rights of the holder of the obligation to the extent of the amount paid on the guaranty." 38 U.S.C. § 3732(a)(1). Although the statute itself only mentions subrogation, the regulation implementing it also gives the Secretary a right of indemnity:

(a) The Secretary shall be subrogated to the contract and the lien or other rights of the holder to the extent of any sum paid on a guaranty or on account of an insured loss....

(e) *Any amounts paid by the Secretary* on account of the liabilities of any veteran ... *shall constitute a debt owing to the United States by such veteran.*

38 C.F.R. § 36.4323 (emphasis added).

Consistent with this regulation, courts have repeatedly held that the VA has a right of indemnity. In *United States v. Shimer,* 367 U.S. 374, 81 S.Ct. 1554, 6 L.Ed.2d 908 (1961), the Supreme Court considered whether a Pennsylvania statute, which prohibited deficiency judgments until a state court valuation of the property was obtained, was inconsistent with regulations governing the calculation of the amount of guarantee the VA pays the lender. The veteran argued that, because the statute provided only for subrogation, the VA couldn't seek a deficiency judgment against him outside the state law procedure. *Shimer* flatly rejected this contention: "[T]he statute affords an independent right of indemnity to the Veterans' Administration." *Id.* at 387, 81 S.Ct. at 1563.[1]

---

1. The veterans suggest that *Shimer* is no longer good law in light of modern developments in

federal preemption doctrine. Appellee's Supplemental Brief at 6. The Supreme Court appar-

While *Whitehead* recognized that the Secretary has both a right of indemnity and a right of subrogation, 904 F.2d at 1364–67, it nonetheless assumed the right of indemnity was secondary to the right of subrogation: "The VA's primary right against the debtor is the statutory right to subrogation. When a state antideficiency law precludes collection by way of subrogation, the VA may exercise its independent indemnity right, which displaces the effect of state law." *Id.* at 1369. *Whitehead* construed the right of indemnity to be merely a surrogate for the right of subrogation, available only when subrogation was impossible, i.e., in those states that prohibit all deficiency judgments.[2] So long as the VA could instruct lenders to foreclose in a way that would protect the lender's right to collect a deficiency judgment, the VA's "primary" right of subrogation would be preserved, rendering the indemnity right unnecessary. *Whitehead* framed the issue as involving a "choice of remedy," *id.* at 1368; when the VA elects foreclosure that interferes with or prohibits its indemnity right, it's bound by that decision. Thus, in a state like Washington or Idaho,

> [b]ecause the VA directs the lender's choice between the two methods available ... it is in complete control of its ability to be made whole. Given the availability of the judicial foreclosure alternative, which allows the VA to exercise its primary right to subrogation and proceed directly against the debtor, the VA may not choose the non-judicial foreclosure alternative, and then resort to its right to indemnity.

*Id.* at 1369.

This rationale has intuitive appeal. It seems fair to recognize the *quid pro quo* involved in the use of nonjudicial foreclosure. If the VA wishes to avoid judicial foreclosure, which tends to be debtor-friendly, it should have to abide the consequences of that decision under state law.

But this approach is not consistent with the regulations as written by the VA and as interpreted by the Supreme Court in *Shimer*. The regulation, 38 C.F.R. § 36.-4323, says the VA has the right of both subrogation and indemnity; it says nothing about the right of indemnity being available only if the VA can't fully recover through subrogation. The regulation doesn't rank the rights of subrogation and indemnity, nor express a preference for one over the other; the two rights are set out in parallel provisions with no indication that one is dependent or conditioned on the other. The words "primary" and "secondary" are nowhere to be found in the regulation. Indeed, the regulation is captioned simply, "Subrogation and indemnity." The only reasonable conclusion we can reach

ently still thinks *Shimer* is good law, *see, e.g., City of New York v. FCC,* 486 U.S. 57, 64, 108 S.Ct. 1637, 1642, 100 L.Ed.2d 48 (1988); *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 700, 104 S.Ct. 2694, 2701, 81 L.Ed.2d 580 (1984), and we are in no position to disagree. *Cf. Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1921–22, 104 L.Ed.2d 526 (1989) ("If a precedent ... has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.") We recently declined a similar invitation to limit *Shimer:* "The veterans argue that *Shimer* is no longer good law. We reject this argument." *Connelly v. Derwinski,* 961 F.2d 129, 131 n. 1 (9th Cir.1992). Other circuits also continue to follow *Shimer. See, e.g., United States v. Davis,* 961 F.2d 603, 609–10 (7th Cir. 1992); *Vail v. Derwinski,* 946 F.2d 589, 590 (8th Cir.1991).

In addition, the veterans point out that *Shimer* involved a different regulation, 38 C.F.R. § 36.4320, which deals with the calculation of the amount of guarantee the VA must pay the lender. They claim this is significant because *Shimer* involved the relationship between the VA and lenders, whereas this case involves the relationship between the VA and veterans. But *Shimer* was an indemnity action by the VA directly against the veteran. Moreover, the Court's square holding—that the regulation provides an independent right of indemnity against the veteran—is directly applicable to this case.

2. A state law that permitted foreclosures generally, but prohibited or restricted them in some cases—for example, barred deficiency judgments against property worth less than $40,-000—would also be preempted. The effect would be the same in either state: The lender, and thus the VA, would be unable to preserve its right to a deficiency judgment against some veterans, no matter how diligently the lender complied with state foreclosure law.

from reading the regulation is that the right of indemnity stands on equal footing with the right of subrogation. This conclusion is not altered by the fact that we deal here with an administrative regulation rather than a statute: "[P]roperly promulgated, substantive agency regulations have the 'force and effect of law.'" *Chrysler Corp. v. Brown*, 441 U.S. 281, 295, 99 S.Ct. 1705, 1714, 60 L.Ed.2d 208 (1979).

■ Nor does it matter that the VA has, by choosing nonjudicial foreclosure, essentially been able to secure the benefits of nonjudicial foreclosure with none of the drawbacks. The VA is not a private litigant, limited to the choices provided by state law; it's an arm of the federal government and cannot be deprived of the benefits of federal law, regardless of any election it may make under state law. Federal law is mandatory, and neither the State of Idaho through legislation, nor the VA through its litigation choices, can waive its applicability. *Cf. Adams Fruit Co. v. Barrett*, 494 U.S. 638, 646, 110 S.Ct. 1384, 1389, 108 L.Ed.2d 585 (1990) ("We likewise reject petitioner's contention that, where Congress authorizes a private right of action to vindicate a federal right, we should assume that Congress has conditioned that right on the unavailability of a state remedy.")

■ We are not free to pick and choose among statutory or administrative provisions in order to achieve a result we deem fair or sensible. We may, as a matter of legislative interpretation, place a gloss on vague or undefined terms. *See, e.g., Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (a municipality is a "person" within the meaning of 42 U.S.C. § 1983). Congressional silence may, from time to time, require us to fill gaps within the interstices of a statute. *See, e.g., J.I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (shareholders have cause of action to sue for violation of § 14(a) of Securities Exchange Act of 1934). We may insist on a clear statement of congressional intent before interpreting a statute in a way that compromises especially weighty values. *See, e.g., Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 243, 105 S.Ct. 3142, 3147–48, 87 L.Ed.2d 171 (1985) (Congress must unequivocally express its intent to abrogate states' Eleventh Amendment immunity). Likewise, we may construe a statute narrowly when its literal reading seems inconsistent with the Constitution. *See, e.g., Eastern R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 137–38, 81 S.Ct. 523, 529–30, 5 L.Ed.2d 464 (1961) (Sherman Act interpreted to exempt lobbying for commercial advantage in order to avoid potential conflict with right to petition government). And, in rare cases, the asserted justification for a regulation may be so far afield from the agency's assigned mission that we discard our usual presumption that an agency actually relies upon its stated reason when adopting a rule. *See Hampton v. Mow Sun Wong*, 426 U.S. 88, 104–05, 96 S.Ct. 1895, 1905–06, 48 L.Ed.2d 495 (1976).

This case falls under none of these rubrics. The regulation at issue plainly says the VA has a right of both subrogation and indemnity. There is no occasion for us to resolve any conflict between the exercise of these two rights, because both can be fully enforced. Indeed, not only are the rights of subrogation and indemnity not in conflict, they are complementary and mutually reinforcing. Demoting the right of indemnity to second-class status amounts to a judicial rewriting of the regulation.

*Whitehead*'s construction of the regulation—that the right of indemnity is relevant only when the state bans all deficiency judgments—relegates the provision to near-total irrelevance. In any state like Idaho, if the VA wishes to seek a deficiency it must foreclose judicially or else comply with additional procedural obligations. And in a state like Washington, the choice is even more stark because the VA has only one option—judicial foreclosure—that will retain its right of indemnity.[3] If the

---

**3.** Curiously, under *Whitehead* the VA is better off in a state like California which, in the case of single family dwellings, entirely prohibits deficiency judgments on notes secured by pur-

VA doesn't elect judicial foreclosure it sacrifices forever the regulation's guarantee that it can proceed directly against the veteran. While *Whitehead* phrased the issue as merely a "choice of remed[ies]," 904 F.2d at 1368, the imposition of such an artificially forced choice is inconsistent with federal law, which gives the VA the right to avail itself of *both* remedies.

*Whitehead*'s central assumption has been examined and rejected by two other circuits. *United States v. Davis*, 961 F.2d 603 (7th Cir.1992), considered whether Wisconsin's foreclosure scheme, materially identical to Idaho's, was preempted. After first recognizing the existence of a federal indemnity right that didn't depend on state subrogation or foreclosure law, *id.* at 608, the court rejected the argument that the VA had forfeited its indemnity right by instructing lenders to proceed by way of nonjudicial foreclosure. "Simply because the VA could have instructed lenders to proceed [with judicial foreclosure]; and arguably preserved its subrogation rights, does not provide us authority for insisting that it take that course of action." *Id.* at 609. Unable to find any support for "forc[ing] the VA to privilege its subrogation right over its indemnification right," *id.*, the court permitted the VA to recover from the veteran. In so holding, the Seventh Circuit considered and declined to follow *Whitehead*. *Id.* The Eighth Circuit reached a similar conclusion. *See Vail v. Derwinski*, 946 F.2d 589, 591 (8th Cir.1991) ("[W]e cannot agree with the *Whitehead* premise that when the state provides dual foreclosure procedures the judicial foreclosure procedure is primary and the nonjudicial procedure is secondary. No rationale exists for this conclusion."); *see also Boley v. Principi*, 144 F.R.D. 305 (E.D.N.C.1992) (also rejecting *Whitehead*).

*Whitehead*'s assertion that the VA's indemnity right plays second fiddle to its subrogation right was unsupported and, we conclude, unsupportable. We join the Seventh and Eighth Circuits and hold that

*Whitehead* was incorrectly decided; accordingly, we overrule it.

C. The application of the foregoing principles to this case is straightforward. The district court, relying on *Whitehead*, held that the VA's ability to recover from the veterans was limited by its election (through the lenders) of nonjudicial foreclosure. As we have said, the VA retains an independent right to recover directly from the veterans any sums it pays lenders. The district court therefore erred in granting the veterans' motion for summary judgment, and for the same reasons erred in denying the VA's cross-motion.

We need not decide whether the Idaho foreclosure scheme is preempted. Whether and under what circumstances the state deficiency procedures might produce a lesser recovery than an action on the federal indemnity right isn't pertinent. Such analysis incorrectly assumes that the VA must comply with the state scheme in order to recover from the veterans. Regardless of the method by which a lender proceeds against a defaulting veteran—even when it does so at the VA's direction—the VA always possesses a right of indemnity against the veteran for the amount of guarantee paid to the lender. This is an independent right of indemnity, created by federal law, which state courts must honor. *See McKnight v. United States*, 259 F.2d 540, 544 (9th Cir.1958) (indemnity actions by VA "arise[] under the federal law and cannot be impaired by a state statute"); *see also Testa v. Katt*, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967 (1947) (state courts must entertain federal causes of action). Because this federal indemnity right doesn't depend on state foreclosure or deficiency law, preemption analysis is unnecessary. "[T]he VA's right to indemnity derives from a contract independent of the mortgage. As indemnitor the veteran is in the same position as the guarantor: accordingly ... [the state] law does not impair the VA's right of indemnification and ... there is no need for finding federal preemption." *Vail*, 946 F.2d at 592. State laws

---

chase money mortgages. *See* Cal.Code Civ.Proc. § 580b; *see also United States v. Rossi*, 342 F.2d 505, 506 (9th Cir.1965) (California prohibition

on deficiency judgments preempted by VA regulations).

which affect lenders' ability to recapture additional amounts from veterans after foreclosure therefore do not affect the VA's independent right to seek recovery from veterans. Those laws are not preempted by federal law; they are simply irrelevant.

### Conclusion

The district court's orders denying the VA's motion for summary judgment and granting the veterans' motion for summary judgment are each REVERSED; the case is REMANDED for further proceedings consistent with this opinion; and *Whitehead v. Derwinski*, 904 F.2d 1362 (9th Cir. 1990), is overruled.

BEEZER, Circuit Judge, with whom Circuit Judges HUG, FLETCHER and BRUNETTI join, dissenting:

Because I conclude the VA may not recover amounts paid on its guaranty after the VA authorizes the veteran's release from liability, I would affirm the district court's order enjoining the VA's collection activities and compelling the return of funds impermissibly collected.

### I

An eligible veteran may obtain a loan secured by residential property from a private lender that is guaranteed by the VA. The VA is a compensated guarantor. 38 U.S.C. § 3729. If the veteran defaults on the loan, the VA, as guarantor, may pay losses sustained by the lender as determined under VA regulations. 38 C.F.R. § 36.4321. The regulations require the lender to notify the VA before foreclosing and to allow the VA to instruct the lender on how to proceed. 38 C.F.R. §§ 36.4317, 36.4324(f)(2). If the lender releases the veteran from liability without the VA's prior approval, the VA is generally released from liability on its guaranty. 38 C.F.R. § 36.4324(f). State law governs any foreclosure. 38 U.S.C. § 3720(a)(6); 38 C.F.R. §§ 36.4319, 4320.

Each plaintiff Idaho veteran purchased residential real property with a VA guaranteed loan. Each loan became delinquent in repayment and was in default. At the VA's direction, the lender initiated a non-judicial foreclosure. The lender did not seek a deficiency judgment within the three month period set forth under Idaho law. Idaho Code (IC) § 45–1512. The VA could have instructed the lender to foreclose judicially and seek a deficiency judgment. IC §§ 6–101; 45–1503. A deficiency judgment would have fixed the amount of remaining liability, if any, to be imposed upon the veteran after foreclosure. IC §§ 6–108, 45–1512. Under Idaho law, failure to obtain such a judgment after foreclosure bars action to collect any asserted debt relating to the loan. *Frazier v. Neilsen & Co.*, 769 P.2d 1111, 1114 (Idaho 1989).

The amounts paid by the VA pursuant to its guaranty gave rise to a statutory subrogation to the lender's causes of action against the veteran. 38 U.S.C. § 3732(a)(1). If the lender had obtained a deficiency judgment, this subrogation right would have allowed the VA to attempt collection from the veteran. Instead, the VA asserted a federal right of indemnity and began various collection activities against the veteran.

### II

In *United States v. Shimer*, 367 U.S. 374, 386–88, 81 S.Ct. 1554, 1562–63, 6 L.Ed.2d 908 (1961), the Supreme Court emphasized the role that equitable principles of surety law play in defining the VA's recovery rights and at no point indicated that the recovery rights extend beyond their equitable underpinnings. *Shimer* simply does not stand for the inequitable proposition that the VA may recover amounts paid on its guaranty after authorizing the veteran's release from liability.

Although the VA's rights of recovery by way of subrogation and indemnity may, in some sense, have equal footing, the rights certainly stand on different ground. The subrogation right works as an equitable assignment of the lender's claims, with the VA taking any such claims subject to defenses of the veteran. Laurence P. Simpson, *Handbook on the Law of Surety-*

*ship* 211 (1950); Restatement of the Law of Security § 141. Thus, recovery under the subrogation right may be defeated by operation of law if, for example, the statute of limitations bars recovery.

In *Shimer,* the Court stated that the indemnity right flows from the "ordinary concomitants of a guaranty relationship" and that 38 C.F.R. § 36.4323(e) is "merely declaratory of a surety's customary right of indemnity." 367 U.S. at 386, 387–88, 81 S.Ct. at 1562–63. As such, the indemnity right is rooted in the equitable concept that direct recovery by the VA may prevent unjust enrichment of the veteran. Simpson, *supra,* at 225–26. The indemnity right thus is generally unaffected by defenses of the veteran that are not available to the VA. Simpson, *supra,* at 227. For instance, the VA may recover under the indemnity right even though the veteran has been discharged by operation of law. *Id.*

Under surety law, if the VA consents to the veteran's release from liability, the VA retains its liability on the guaranty and loses its rights of subrogation and indemnity from the veteran. Simpson, *supra,* at 301. Manifest inequities would result if the VA could consent to the veteran's release from liability yet retain recovery rights. As occurred here, the VA would be free to decide when it was advantageous to determine a deficiency without involvement of a court or the veteran, pay that self-determined deficiency, and be made whole on a full recovery from the veteran.

Nothing in *Shimer* detracts from the equitable principles that govern the VA's rights of recovery. The Supreme Court does not say that the VA may recover after authorizing the veteran's release from liability. Moreover, the rights of recovery outlined in *Shimer* allow the VA to control its losses. In a state like California, which prohibits deficiency judgments, the lender's deficiency claim is barred by operation of law upon foreclosure. The VA, with no opportunity to recover through subrogation

and not having consented to the veteran's release from liability, may still recover under the indemnity right. Simpson, *supra,* at 231.

In states like Idaho that allow deficiency judgments, the VA may instruct the lender to seek such a judgment and recover under the subrogation right. The indemnity right permits recovery if the VA retained liability even though the lender released the veteran from liability without the VA's prior approval. *See* 38 C.F.R. § 36.4324(f)(2). If the VA instructs the lender to release the veteran from liability, however, the VA waives the subrogation and indemnity rights and may not recover amounts paid on its guaranty.

Because here the VA authorized release from liability, the veteran has no obligation to reimburse the VA. The VA directed the foreclosure and does not contend that the veteran was released from liability without its prior approval. In these circumstances, nothing in § 36.4323(e), or the principles of suretyship that support the VA's rights of recovery, permit the VA to recover amounts paid on its guaranty.